Robert L. MADSEN and Nancy A. Madsen, d/b/a Pit Stop Bar & Grill and MLE, Inc., Plaintiffs-Respondents-Cross Appellants,

v.

THRESHERMEN'S MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross Respondent,†

John T. SLANGA, INS Investigations Bureau, Inc., David W. Leitschuh, and General Adjustment Bureau, Defendants.

Court of Appeals

*No. 88–1060. Orally argued December 22, 1988.—Decided March 14, 1989.*

(Also reported in 439 N.W.2d 607.)

† Petition to review denied.

598

599

For defendant-appellant-Cross Respondent. there were briefs by *Lee F. Haskell* and *Bradley J. Ayers* of *Cosgrove and Haskell* of Minneapolis, Minnesota, and oral argument by *Lee F. Haskell.*

For plaintiffs-respondents-cross appellants there were briefs and oral argument by *James H. Taylor* of *Benson and Taylor,* of Siren.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. This insurance controversy stems from an insured's arson of a local tavern. Threshermen's Mutual Insurance Company (Threshermen) appeals a summary judgment denying its claims for attorney fees, punitive damages, and reimbursement for an amount paid to its insured's land contract vendor. The insureds, Robert and Nancy Madsen, cross-appeal, arguing that the trial court erred by denying Nancy, the spouse and innocent insured, a portion of the insurance proceeds and by denying a new trial on the issue of bad faith. We affirm in part, reverse in part, and remand the cause for further proceedings consistent with this opinion.

In 1979, Robert and Nancy Madsen purchased a bar, home, and outbuildings from Mary Ann Schmidt on a land contract. The Madsens assigned the land contract to Madsen Leisure Enterprise, Inc. (MLE, Inc.), a corporation owned equally by Robert and Nancy.

The Madsens purchased a fire insurance policy from Threshermen, naming Robert and Nancy Madsen, d/b/a Pit Stop Bar & Grill, and MLE, Inc., as the

600

insureds. The policy contained an exclusionary clause denying Threshermen liability for intentional acts caused by the insured. Specifically, the clause absolved Threshermen of liability for any "loss occurring while the hazard is increased by any means within the control or knowledge of the insured." The policy also contained a standard mortgage clause naming Mary Ann Schmidt as mortgagee[1] and authorizing payments by Threshermen to the mortgagee for any "loss to buildings as interest may appear."

On June 14, 1982, a fire destroyed the Pit Stop Bar & Grill. Initially, Threshermen denied the Madsens' claim, alleging that Robert intentionally set the fire. Shortly after the fire, Schmidt began a foreclosure action on the land contract. The Madsens owed $33,050.81 on the land contract at the time of the fire.

Approximately six months after Robert and Nancy filed the claim, Threshermen paid $33,050.81[2] to Schmidt without informing the Madsens of the payment. Thereafter, Schmidt foreclosed against Nancy and Robert, and the Madsens claimed they lost the opportunity to raise as an affirmative defense the issue that this payment satisfied the land contract. Subsequently, Nancy and Robert commenced this action against Threshermen.

Specifically, Robert and Nancy sued Threshermen on the insurance contract for bad faith for failure to timely pay Schmidt's claim, failure to notify them of the payment, and for punitive damages. Threshermen counterclaimed against Robert and MLE, Inc., for the

[1] Although Mary Ann Schmidt was the land contract vendor, the insurance policy referred to her as the mortgagee.

[2] Collectively, the parties agree that this was an overpayment and the correct amount should have been $32,235.21, the amount of damage to the building.

amount it paid to Schmidt, and attorney fees, costs, disbursements, and interest.

The jury found that Robert intentionally set the fire but awarded Nancy and Robert $7,500 in punitive damages, even though it did not answer a special verdict question whether Threshermen's actions in delaying payment to Schmidt amounted to express malice. The trial court found the damage to the building amounted to $32,235.21, and the value of the building's lost contents amounted to $12,791.23.[3]

In response to post-verdict motions, the trial court granted a new trial on the bad faith issue. The trial court reasoned that the bad faith instruction was in error because the jury never considered the issue[4] and that the interest of justice required a new trial. The trial court also found the verdict to be perverse because the jury awarded punitive damages without first finding that Threshermen acted in bad faith. Finally, the trial court accepted that part of the verdict finding Robert committed the arson. Robert does not challenge this finding.

Subsequently, the trial court allowed Threshermen to amend its counterclaim. In addition to its original counterclaim, Threshermen sought attorney fees, adjusting expenses, costs, and punitive damages against Robert for defending a claim caused by Robert's arson, and attorney fees and costs against both Robert and

[3]The parties stipulated to both damage amounts before trial.

[4]The special verdict question required the jury to answer whether Threshermen acted in bad faith only if they found that both Robert and Nancy intentionally set the fire. Because the jury found that Robert intentionally set the fire, they appropriately did not answer the bad faith question. In its order for a new trial, the trial court admitted that it allowed the erroneous jury instruction to be submitted.

Nancy pursuant to sec. 814.025, Stats., the frivolous claims statute. Threshermen then moved for summary judgment on its amended counterclaim.

The trial on the bad faith issue never occurred. Instead, the trial court issued a judgment that:

> 1.  denied Nancy's motion for judgment on the verdict, reasoning that the *Hedtcke* rationale did not apply in this instance. *Hedtcke v. Sentry Ins. Co.* 109 Wis. 2d 461, 326 N.W.2d 727 (1982), allows an innocent insured to collect insurance proceeds even if another insured caused the damage;
>
> 2.  denied Nancy's motion for a new trial on bad faith because:
>
> a.  she is not entitled to actual damages under *Hedtcke;*
>
> b.  Threshermen's delay involved Threshermen and Schmidt only;
>
> c.  recovery under *Hedtcke* was debatable and therefore the delay was justifiable;
>
> 3.  denied Threshermen's counterclaim for reimbursement of the amount paid to Schmidt because the subrogation issue relating to it was never tried and because Threshermen offered no proof of damages at trial;
>
> 4.  dismissed Threshermen's counterclaim for attorney fees, adjusting expenses, costs, and punitive damages for defending suit against Robert because it offered no proof at trial;
>
> 5.  denied Threshermen's counterclaim for sums that Nancy may be awarded because it is a claim for possible future damages;
>
> 6.  found that the claims filed by Robert and Nancy against Threshermen were not frivolous.

## AMENDED COUNTERCLAIM

We begin first by examining Threshermen's amended counterclaim. For some reason not apparent

from the record, the trial court ignored the validity of Threshermen's amended counterclaim. Because the trial court allowed Threshermen to file an amended counterclaim, that is the correct pleading to examine on summary judgment.

■

Summary judgment is governed by sec. 802.08, Stats. Appellate and trial courts apply the same summary judgment methodology that has been stated in numerous appellate opinions. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582 (Ct. App. 1983). We need not restate it here.

The amended counterclaim alleges that Threshermen is entitled to indemnification from Robert and MLE, Inc., for damages to the building based on Robert's fraud and arson. The answer admits that Threshermen is entitled to indemnification from Robert individually, but denies that Threshermen is entitled to indemnification from Nancy or MLE, Inc.

Threshermen seeks reimbursement for the amount it paid under the terms of the fire insurance policy to Schmidt for the damages resulting from Robert's arson. The insurance policy required Threshermen to pay Schmidt, and thereby it became subrogated to the rights of Schmidt.

■

Ordinarily, an insurer does not have a right of subrogation or indemnification against its own insured. *Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 172, 395 N.W.2d 776, 779 (1986). In this instance, however, adhering to this principle would defeat a purpose of subrogation, which is to ultimately place the loss on the wrongdoer. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 444, 360 N.W.2d 33, 36 (1985). Here, the wrongdoer and the insured are the same person,

Robert. Thus, requiring Robert to reimburse Threshermen would appropriately place the loss on the wrongdoer. Moreover, Robert concedes that he should be required to reimburse Threshermen for the damages paid to Schmidt.

Because no genuine issue of material fact exists, we conclude that trial on the issue of reimbursement is unnecessary and therefore remand this portion of the action to the trial court to order judgment for $32,235.21[5] in favor of Threshermen and against Robert.

In its amended counterclaim, Threshermen also seeks attorney fees, adjusting expense, and costs from Robert and MLE, Inc., which it incurred as a result of Robert's arson and fraud. It also seeks punitive damages from Robert and MLE, Inc.

Specifically, Threshermen seeks recovery of the attorney fees it expended at the initial trial to prove Robert committed the arson. Traditionally, under the "American rule," the prevailing litigant is not entitled to collect attorney fees unless authorized by statute or contract. *Meas v. Young,* 142 Wis. 2d 95, 101, 417 N.W.2d 55, 57 (Ct. App. 1987). No applicable statute or contract provision governs here. Exceptions to the general rule exist where the proximate result of the wrongful act by the defendant has involved the plaintiff in litigation with other parties. *Baker v. Northwestern*

---

[5]Because the parties stipulated to the building's damage, Threshermen is liable only for this amount, not the actual amount it paid Schmidt. Under the terms of the insurance policy, Threshermen is required to pay for damages done to the insured property. The parties stipulated that the damage to the insured property was $32,235.21.

*Nat'l Cas. Co.,* 26 Wis. 2d 306, 318, 132 N.W.2d 493, 500 (1965).

However, this exception does not apply here because Threshermen does not allege that it became involved in litigation with third parties because of Robert's arson and fraud. We see no compelling reason here to depart from the long-established rule prohibiting attorney fees. Therefore, Threshermen may not recover the attorney fees it incurred to prove Robert's arson.

Threshermen, however, is entitled to recover consequential damages incurred as a result of Robert's arson. Consequential damages are the natural and proximate result of an actor's wrongful conduct. *Booth v. Frankenstein,* 209 Wis. 362, 368–69, 245 N.W. 191, 193 (1932). We believe the question of what constitutes consequential damages is a question of fact to be resolved by the trial court. Here, consequential damages may include reasonable costs, including what Threshermen must pay Nancy, and reasonable adjusting expenses that directly stem from or relate to Robert's arson. It is fair to conclude that Threshermen would not have incurred adjusting expenses and costs without Robert's misconduct. Such damages were both the natural and proximate result of Robert's arson.

In addition, the trial court must address the reasonableness of the damages. In support of its summary judgment motion, Threshermen filed a two-page affidavit simply listing, among other things, adjusting expenses and costs. The affidavit is insufficient to determine the extent and reasonableness of such damages. This matter is therefore remanded for a

trial on the issue of consequential damages directly arising from Robert's arson. Additionally, because there are factual disputes relating to the issue of punitive damages against Robert, summary judgment is inappropriate and the action is remanded for further proceedings.

## ATTORNEY FEES AND COSTS UNDER THE FRIVOLOUS CLAIMS STATUTE

Threshermen alleges in its amended counterclaim that it is entitled to attorney fees and costs under sec. 814.025 against both Robert and Nancy. Section 814.025 permits recovery of reasonable fees for frivolous claims. A claim is frivolous if the party knew that his or her claim was without any reasonable basis in law or equity and could not be supported by a good faith argument. This issue presents a mixed question of law and fact. *Stoll v. Adriansen,* 122 Wis. 2d 503, 513, 362 N.W.2d 182, 187 (Ct. App. 1984). Determining what a reasonable attorney or litigant would or should have known regarding the facts presents a question of fact. *Id.* at 513, 362 N.W.2d at 187–88. However, whether the knowledge of the facts would lead a reasonable attorney or litigant to conclude a claim is frivolous presents a question of law *Id.* Section 814.025 requires an adequate investigation of the facts and law.

The origin of the tavern's arson was undisputed. The facts reveal that Nancy denied committing the arson and that she was merely exercising her right under the insurance contract when she filed a claim. These facts would lead a reasonable litigant to conclude that her claim was with merit and not frivolous.

607

Moreover, even if Robert did commit the arson, her claim against Threshermen was not frivolous. Wisconsin recognizes recovery for innocent insured spouses, and Nancy merely sought recovery under the relevant case law. *See Hedtcke.* Nancy's claims were not made in bad faith with the intent to harass or injure Threshermen, nor are they without a reasonable basis in law or equity. Threshermen's summary judgment for attorney fees and costs against Nancy under sec. 814.025 was properly denied by the trial court.

We also conclude that Robert's claim for insurance coverage was not frivolous and, therefore, we deny Threshermen's summary judgment for attorney fees and costs against him under the frivolous claims statute. The test for a frivolous claim is whether the position is so indefensible that it is frivolous and that the party should have known it. *Stoll,* 122 Wis. 2d at 512, 362 N.W.2d at 187. Robert continues to deny the arson act, despite the jury's determination. Given the contested nature of the arson, Robert's claim was not indefensible. Threshermen cannot use the jury's verdict after the fact to support the contention that Robert should have known his claim was frivolous. The test for frivolity begins with the time the claim is commenced. We conclude that there was a reasonable legal basis for the claim when Robert filed it.

## NANCY'S CROSS-APPEAL *HEDTCKE* APPLICATION

Nancy cross-appeals the dismissal of her complaint, alleging that as an innocent insured, she is entitled to recover from Threshermen all, or a portion of

the damage done to the building's contents. A policy exclusion for an insured's intentional act does not bar liability coverage to the innocent spouse of a person who intentionally destroys their property. *Hedtcke,* 109 Wis. 2d at 487–88, 326 N.W.2d at 740. In *Hedtcke,* a husband intentionally set fire to the family's home several days before a divorce order would have compelled him to leave the home. The supreme court concluded that the innocent insured was entitled to recover based upon the "contract of insurance rather than the interests and obligations arising from the nature of the property ownership. *Id.* at 485, 326 N.W.2d at 738–39.

Under the principle established in *Hedtcke,* an "innocent insured" may recover if (1) the obligations of the insured are several as opposed to joint, and (2) the court can tailor a recovery that will not benefit the wrongdoer. *Id.* at 487–89, 326 N.W.2d at 740. Here, the trial court concluded that the *Hedtcke* rationale did not apply to Nancy when it stated:

> While both Mrs. Hedtcke and Nancy Madsen are innocent insured wives whose husbands burned the insured property, the cases differ considerably in other respects. Nancy and her husband Robert purchased a parcel of land containing a home, a tavern and outbuildings on a land contract as individuals and then formed MLE, Inc. and then assigned the land contract to MLE, Inc. They lived together in the home. Robert was employed full time, six days as week, as a mail carrier for the U.S. Postal Department while Nancy operated the tavern, however, they did business under the name of Pit Stop Bar & Grill and each owned a fifty percent share of MLE, Inc. Under those facts the Court

finds the *Hedtcke* rationale does not apply to Nancy Madsen and her motion for judgment on the verdict is denied. Let judgment be entered accordingly.

Threshermen's insurance policy named Nancy, Robert, and the corporation as the insureds. The policy excluded coverage for hazards "increased by any means within the control or knowledge of the insured." In *Hedtcke,* the court construed similar policy language to provide separate coverage for the interests of each insured. Applying the "reasonable insured" standard, the supreme court stated that "the person owning an undivided interest in property and being a named insured would reasonably suppose that his or her individual interest in the property was covered by the policy." *Id.* at 487, 326 N.W.2d at 739.

Applying the "reasonable insured" standard, we determine as a matter of law that Nancy and Robert have separate interests and obligations under the policy. Therefore, we conclude that the exclusion barring coverage for hazardous acts does not operate to eliminate coverage for Nancy, the innocent spouse who was a named insured under the same policy. Since Nancy and Robert's interests and relevant obligations are several, the remaining issue is whether recovery can occur without benefiting Robert.

The recovery issue requires the trial court to undertake two inquiries: first, whether a recovery can be tailored without benefiting the wrongdoer and, if so, what the tailored recovery will be. The right of recovery must be determined in the particular factual context of the case and in light of specific public policy concerns, including deterring crime and preventing the wrongdoer from profiting from the wrong. *Id.* at 489, 326 N.W.2d at

740. Determining whether there can be a recovery without benefiting the wrongdoer is a question of law that we decide without deference to the trial court. Once it has been determined that a recovery without benefiting the wrongdoer can occur, it is for the trial court in the exercise of its discretion to fashion the actual recovery.

Thus, the recovery's structure must vindicate valid public policy concerns and guard against the possibility that the wrongdoer might receive financial benefit as a result of arson. *Id.* The supreme court in *Hedtcke* offered trial courts this guidance:

> For example, the arsonist may be denied all recovery while the innocent insured may recover a pro rata share of the insurance proceeds, according to his or her interest in the property. Indirect profit and insurance fraud may also be avoided without recourse to an absolute bar on the recovery of the innocent insured. The possibility that an arsonist may profit through the comingling of funds with the innocent insured or otherwise is a factual issue properly resolved by the fact-finder.

*Id.* at 489, 326 N.W.2d at 740.

Recently, we affirmed a trial court's decision that awarded an innocent insured 100% of the recovery. In that case, the husband burned the couple's house and then proceeded to commit suicide with a gun during the fire. *Felder v. North River Inc. Co.,* 148 Wis. 2d 130, 435 N.W.2d 263 (Ct. App. 1988). Because the husband did not survive the fire, there was no possibility the trial court's award would benefit the wrongdoer. In *Hedtcke,* where the husband survived the fire but was getting a divorce, the supreme court suggested that he may be denied all recovery while the innocent insured could

recover a pro rata share of the insurance proceeds based on her interest in the property. We are now faced for the first time with an innocent spouse and a wrongdoer who both intend to continue their marriage.

Here, it is undisputed that Nancy and Robert each own 50% of the corporation the land contract was assigned to, and the contents damage amounted to $12,791.23. We conclude as a matter of law that recovery without benefiting Robert can be fashioned and, under the undisputed facts of this case, Nancy is entitled to one-half of the contents damage. Nancy's recovery accurately reflects her interest in the corporation, and to deny her any recovery because of Robert's misconduct would be tantamount to punishing her for his misconduct.

The tailoring of Nancy's recovery, however, is left to the trial court's discretion. Depending upon the circumstances, adequate tailoring could range from issuing a check solely to Nancy to such means as a trust funded with the recovery. Whether Robert may profit from the actual fashioned recovery is a factual issue properly reserved for the trial court. We recognize that the facts and equities of each case may result in different structured recoveries. We therefore remand this portion of the proceeding and direct the trial court to exercise its discretion in tailoring a recovery for Nancy without benefiting Robert.

## NANCY'S CLAIM FOR BAD FAITH AND PUNITIVE DAMAGES

Here, Nancy asserts that Threshermen committed bad faith by (1) delaying payment to Schmidt; (2) failing to notify the Madsens of the payment to

612

Schmidt; and (3) denying Nancy any recovery for contents damage. The trial court denied Nancy's bad faith claim because it concluded that the delay and notification did not involve or concern the Madsens because Threshermen was obligated only to Schmidt. We disagree.

We conclude that Threshermen's obligation to pay Schmidt directly involved Nancy. The Madsens were the owners and named insureds of the insurance policy that obligated Threshermen to pay Schmidt. As a named insured, it is inconceivable that Nancy would not be directly involved or affected by an obligation she contracted for. Nancy and the bar's continuing business may have been directly harmed by Threshermen's delay. However, the issue of whether Threshermen was justified in delaying payment to Schmidt and whether Nancy suffered any damages as a result of the delay is best resolved by a trier of fact. We therefore remand this cause of action for a new trial on the issue of bad faith as it concerns Threshermen's payment delay. Additionally, whether Threshermen acted with express malice to justify punitive damages is a question of fact for the jury.

Also, Nancy contends that Threshermen's failure to notify her of its payment to Schmidt constitutes bad faith. Nancy asserts that she was denied an opportunity to raise this payment as an affirmative defense in a separate foreclosure action Schmidt initiated against the Madsens. We disagree.

The insurance policy requires Threshermen to pay Schmidt for any loss to the buildings. The land contract requires such insurance proceeds to be applied to the restoration or repair of the property. Threshermen

613

mistakenly paid an amount reflecting the unpaid balance of the land contract; however, it was only obligated to pay for the damages to the buildings. The insurance proceeds went to the repair of the tavern and were not applied to the land contract's outstanding balance. Consequently, failure to notify the Madsens of this payment in no way affected Schmidt's foreclosure action against the defaulting Madsens and does not constitute a bad faith cause of action.

Finally, Nancy asserts that Threshermen committed bad faith by denying her request for recovery of the contents damage. Threshermen contends that the issue of whether Nancy was entitled to the contents damage under *Hedtcke* was a fairly debatable issue, and its action stemmed from a genuine dispute over the status of the law. We agree. A claim is defined as fairly debatable where a genuine dispute over the status of the law or fact exists at the time the denials were made. *See Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 693-94, 271 N.W.2d 368, 377 (1978). Although we conclude that *Hedtcke* governs, its application was nevertheless debatable under the circumstances. Consequently, the trial court correctly dismissed this portion of Nancy's bad faith claim.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded. Costs to Nancy Madsen against Threshermen; costs to Threshermen against Robert Madsen.