**EOTT ENERGY OPERATING LIMITED PARTNERSHIP,**
**Plaintiff,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al., Defendants.**

**No. CV–90–122–GF–RFC.**

United States District Court,
D. Montana.

Aug. 10, 1999.

Glen Tremper, Jean Faure, Church, Harris, Johnson, Williams, Great Falls, MT, for plaintiff.

Jack Lewis, Patrick Watt, Jardine, Stephenson, Blewett & Weaver, Great Falls, MT, for defendant.

## ORDER & MEMORANDUM

CEBULL, United States Magistrate Judge.

### I. INTRODUCTION

Numerous motions are pending in the above-captioned insurance breach and bad faith case. This order will address three of these motions together because they raise related issues: 1) Plaintiff's Motion in Limine Regarding Evidence of this Court's Prior Judgment on the Pleadings; 2) Plaintiff's Motion in Limine Regarding

Defendants' "Reasonable Basis" for Contesting Plaintiff's Claim; and 3) Defendants' Motion for Partial Summary Judgment "as to Plaintiff's Count III, Based on Law of the Case." The Court has reviewed the briefs, heard limited oral argument, and is prepared to rule.

## II. BACKGROUND

For purposes of the three motions decided today, the following facts are pertinent. Plaintiff (formerly Enron, now EOTT) was a defendant in a Montana state court case in which Ashland Oil, Inc. alleged that Enron wrongfully injected a substance called B–G mix into a common carrier oil pipeline owned by Portal Pipe Line Company that supplied oil to Ashland's refinery. Ashland sued Portal Pipe Line for allowing the injections, and Enron and others who injected B–G mix into the pipeline (the "underlying case"). The parties to the underlying case settled, and Enron sought indemnification from its excess insurance carriers, the Defendants in the instant case, for the amount Enron paid towards settlement. Enron's primary insurer, Travelers Indemnity Company, contributed to the settlement, but the Defendants did not participate in the settlement or contribute to the amount Enron paid towards the settlement. When Defendants refused to indemnify, Enron initiated the instant litigation.

Plaintiff alleges that Defendants breached their contract by refusing to cover Plaintiff's indemnification claim, and further allege violations of Montana's Unfair Trade Practices Act (UTPA). Plaintiff alleges that Defendants violated the UTPA by refusing to indemnify Plaintiff without conducting a reasonable investigation and by refusing to attempt in good faith to effectuate prompt and equitable settlement of Plaintiff's claims when liability became reasonably clear.

In late 1988, the claims attorney for certain Defendants wrote a letter to Plaintiff, informing Plaintiff of the reasons for Defendants' denial of coverage. The primary reason given was "the fact that Ashland Oil's claim [was] primarily for the price differential between what was paid [by Ashland] . . . and what was actually injected into the Portal Pipeline. . . . Ashland is seeking restitution from Enron . . . for the unjust profits [Enron] gleaned from the injection. . . ." Letter from J. Winowiecki dated Dec. 13, 1988. According to the letter (and Defendants), such claims did not "fall within the coverage provided." *Id.* The letter stated that denial was also based on an " 'Industries, seepage, Pollution, and *contamination* clause,' for any property damage caused by contamination." *Id.* (emphasis in original) (the clause is referred to as the pollution exclusion).

Back on the litigation front, on Defendants' motion for judgment on the pleadings, the honorable Judge Hatfield, predecessor to the undersigned as trial judge for the instant case, found for the Defendants. Judge Hatfield ruled that the pollution exclusion did not excuse coverage, but that Montana's public policy, barring recovery by an insured for its own intentional acts, relieved Defendants from a duty to indemnify Plaintiff.

On appeal, the Ninth Circuit Court reversed in part and affirmed in part. *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co.*, 132 F.3d 526 (9th Cir.1997). The court agreed that the pollution exclusion gave Defendants no assistance, but reversed as to the intentional act/public policy issue. The court concluded that, because Ashland's complaint stated claims for negligence, strict liability and intentional torts, Plaintiff was entitled to prove that the negligence and strict liability claims were a major factor and the intentional act claims were a minor factor in arriving at its settlement payment in the underlying case. *Id.* at 528–29. Because recovery for negligence and strict liability is not barred by public policy, the court remanded the case to allow Plaintiffs to show the settlement was based upon those claims.

Now on remand, the parties have filed motions for summary judgment on the coverage and UTPA (bad faith) claims. Plain-

tiff's motion for summary judgment on the coverage claim will be granted, but will be the subject of a separate order. The Defendants' motion for summary judgment on the UTPA claim is the subject of the instant order. Related to the issues raised by that motion, and also the subject of this order, are two motions in limine filed by Plaintiff.

## III. DISCUSSION

### A. What Factual Evidence May Defendants Present in Showing that They Had a Reasonable Basis for Contesting Plaintiff's Claim?

Under the UTPA, an insured has an independent cause of action against an insurer for actual damages caused by an insurer's unfair claim settlement practices. Mont.Code Ann. § 33–18–242(1) (incorporating portions of § 33–18–201). The insured may also seek exemplary damages for an insurer's unfair claims practices, if the insured proves by clear and convincing evidence that such conduct was done with actual fraud or malice. § 33–18–242(4) (incorporating § 27–1–221).

■ However, under section 33–18–242(5), "An insurer may not be held liable [for unfair claims practices] if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." It is important to note that "a jury could find violations of the [UTPA] and still determine that an insurer was not liable under the [UTPA] (for actual or punitive damages) on the basis that the insurer had established the 'reasonable basis' defense." *Dees v. American Nat'l Fire Ins. Co.*, 260 Mont. 431, 861 P.2d 141, 153 (1993) (Gray, J., concurring). Stated differently:

> [E]ven if violations and actual fraud or malice are established, an insurer still may assert that it had a reasonable basis for contesting the claim made under the insurance policy. If an insurer can establish such a reasonable basis, it may not be held liable under [the UTPA], at all. In other words, provided an insurer can prove to the satisfaction of the find-

er of fact that it had a reasonable basis for denying the claim, § 33–18–242(5) provides a complete defense to both actual and punitive damages under the [UTPA].

*Id.* at 154.

Defendants have moved for summary judgment on the UTPA claim, asking this Court to rule, as a matter of law, that Defendants had a reasonable basis for denying Plaintiff's claim. Plaintiff has filed a motion in limine, arguing that Defendants, in proving their reasonable basis defense, should be precluded from using facts that were not known to Defendants at the time they denied coverage.

To prove it acted reasonably in contesting coverage, Defendants naturally wish to present evidence of all facts helpful to their position, including those that came to light after their initial denial of coverage. What this Court must decide, then, is whether an insurer is limited to presenting only those facts known to the insurer before and up to the moment of denial, or whether the insurer may present facts that were discovered or developed after its decision to deny.

The statutory language suggests the limited approach; it frames the defense as whether "the insurer *had* a reasonable basis in law or in fact for contesting the claim. . . ." § 33–18–242(5) (emphasis added). Further, because the UTPA establishes a duty to "conduct[ ] a reasonable investigation based upon all available information," it would subvert the policy behind the UTPA to allow an insurer to promptly deny coverage, perform little or no investigation, then later justify its decision with information obtained after the decision was made, and by so doing, escape all liability. This approach would encourage bad faith settlement practices.

Unfortunately, the Montana Supreme Court has not been faced with this precise question. But law from other jurisdictions supports Plaintiff's position. Following California law, a U.S. district court stated that "the reasonableness of an insurer's conduct must be determined based on the

basis of the information known to it at the time of denial." *Aceves v. Allstate Ins. Co.,* 827 F.Supp. 1473, 1487 (S.D.Cal.1993) (citing *Austero v. National Cas. Co.,* 84 Cal.App.3d 1, 148 Cal.Rptr. 653 (1978) where the court ruled: "In evaluating the evidence to see if there was any unreasonable conduct by the [insurer], it is essential that no hindsight test be applied. The reasonable or unreasonable action by the [insurer] must be measured as of the time it was confronted with a factual situation to which it was called upon to respond."). Similarly, a Wisconsin court concluded that in determining whether an insurer was justified in refusing to cover a claim, the insurer may rely on only that "information available to the insurance company at the time the demand is presented." *Rhiel v. Wisconsin County Mutual Ins. Corp.,* 212 Wis.2d 46, 568 N.W.2d 4, 8 (Ct.App.1997); *accord Radecki v. Mutual of Omaha Ins. Co.,* 255 Neb. 224, 583 N.W.2d 320, 326 (1998) (the "arguable basis" to deny a claim must be based on information available at the time the demand is presented); *Carlson v. Safeco Ins. Co.,* 499 So.2d 664, 667 (La.Ct.App.1986) ("What might have been a reasonable basis for refusing to pay, had it been established in 1982, becomes specious in June of 1984, two years after [the] accident.")

■ This Court is convinced that the Montana Supreme Court, if faced with this question, would follow the rule above. That court stated, when answering the question whether an insurer's duty to negotiate in good faith arises only when liability has been legally determined: "In evaluating the insurance case, the jury must determine whether an insurer negotiated in good faith given the facts it had then." *Klaudt v. Flink,* 202 Mont. 247, 658 P.2d 1065, 1067–68 (1986). It is only logical to conclude that a similar limitation should apply to an insurer's defense of its denial of a claim. Accordingly, Plaintiff's motion is limine shall be granted to the extent that it requests that Defendants be limited to presenting only those facts known to them at the time they made their decision to deny coverage.

Fearing this ruling, Defendants argue that such a limitation will unjustly tie their hands at trial. They argue that Plaintiff submitted a false insurance claim, and that only during discovery was this revealed. Defendants insist that they must be allowed to present evidence regarding the false claim, even though the relevant facts became known only after they denied coverage. At the very least, argue Defendants, they must be allowed to impeach Plaintiff's witnesses regarding misrepresentations, etc.

■ There is a fatal flaw in Defendants' argument. If Defendants had been able to show, in response to Plaintiff's motion for summary judgment on the coverage issue, that Plaintiff had made a false claim, this Court would have found that there was no coverage. And where there is no coverage, there is no bad faith. *See Truck Ins. Exch. v. Waller,* 252 Mont. 328, 828 P.2d 1384, 1388 (1992) (finding that claims of bad faith on the part of an insurer are premised upon the existence of a contract between the insured and the insurer; therefore, where the policy excludes coverage, the bad faith claim fails as a matter of law). Thus, had Defendants prevailed in their false claim defense on the issue of coverage, Defendants would not now find themselves defending a bad faith claim.

But Defendants did not prevail on the issue of coverage. Defendants may not now resurrect their allegations of false claims by using after-acquired evidence. As to the impeachment problem, this Court cannot rule in a vacuum. If at trial, Defendants feel they must use after-acquired evidence to impeach a witness, they may be able to do so, depending upon the circumstances. The issue must await its context.

**B. What Evidence of the Law May Defendants Present in Showing that They Had a Reasonable Basis for Contesting Plaintiff's Claim?**

Plaintiff argues that this Court should similarly limit Defendants' presentation, in

showing that they had a reasonable basis for denial, to only the law in existence at the time of their denial.

Again, no Montana Supreme Court case addresses the issue presented. A review of the law from other jurisdictions is instructive, but no "majority rule" emerges. At one extreme, under California law, it appears that not only may an insurer present case law published after its alleged wrongful denial, it may even rely on subsequent changes in the law. For example, a California court held, in a duty to defend context, that an insurer may properly deny a defense even if its duty to defend turns on an unresolved legal question that is subsequently answered in its favor by developments in the case law. *Industrial Indem. Co. v. Apple Computer, Inc.*, 83 Cal.Rptr.2d 866, 872 (1999) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 631–32 (1995), a bad faith case applying the rule requiring the retroactive application of case law).

The opposite view may be found in *Madsen v. Threshermen's Mut. Ins. Co.*, a Wisconsin bad faith case There the court stated: "A claim is defined as fairly debatable where a genuine dispute over the status of the law or fact exists at the time the denials were made." 149 Wis.2d 594, 439 N.W.2d 607, 614 (Wisc.Ct.App.1989); *see also Mechetti v. Illinois Ins. Exch./Classic Synd.*, 1998 WL 151024 (E.D.Pa.) (in a bad faith case, limiting the examination to case law at the time insurer's decision to deny was made). A more flexible approach may be found in *Saunders v. Commonwealth Lloyd's Ins. Co.*, where the court looked primarily at the law in existence at the time the insured denied the claim, but noted that subsequent case law confirmed the reasonable basis for denial. 928 S.W.2d 322, 324–25 (Tex.Ct.App.1996).

■ This Court feels constrained to follow the rule enunciated in Wisconsin and Pennsylvania. The statutory language "*had* a reasonable basis in law ..." suggests a time limitation. The most logical reasoning for applying such a time limitation was enunciated by a federal court, applying pre-*Waller v. Truck Ins.* California law:

> The question of whether Allstate's conduct in denying the claim was reasonable must be reviewed at the time that the allegedly "bad faith" decision was made. The court should not employ a 20–20 hindsight test, but instead the court must review the case law as it existed at the time the insurer acted.... [T]he mere fact that subsequent cases ... have held that Allstate's decision now represents the law does not automatically mean that the defendant's position was reasonable when taken at that time. Similarly, had [subsequent case law] reached the completely opposite result, it would not automatically mean that Allstate's decision was unreasonable.... [T]he proper focus of the bad faith claim is on whether there was a reasonable basis for the decision, not on whether the decision was correct.... [I]f an insurer purposely acted in bad faith ..., the insurer's intent at the time the insurer acted does not magically change simply because of a later determination or belief that coverage was not in fact required. Such bad faith conduct cannot be excused by the discovery of a case that provides an insurer with an after-the-fact justification for its prior behavior.

*Aceves v. Allstate Ins. Co.*, 827 F.Supp. 1473, 1484–87 (S.D.Cal.1993). Thus, Plaintiff's motion in limine is granted to the extent that Defendants are precluded from relying on cases published after they decided to deny coverage for Plaintiff.

## C. Should Defendants be Estopped from Presenting Grounds for Denial that Were Not Contained in Their Denial Letter?

■ We turn next to the final aspect of Plaintiff's motion in limine. Related to the

issues just decided, Plaintiff contends that, in arguing that they had a reasonable basis to deny Plaintiff's claim, Defendants should not be allowed to assert grounds for denial that were not stated in their 1988 denial letter. This argument, however, does not comport with Montana law.

In *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 256 Mont. 211, 845 P.2d 746 (1993), the Montana Supreme Court settled a similar issue, although in the context of a declaratory judgment action regarding whether coverage existed. Portal argued that one of the defendant insurers should be estopped from asserting certain policy defenses because it did not advise Portal in its reservation of rights letters of some of the grounds it later asserted to the trial court. On appeal, the court disagreed. While recognizing that an insurer has a duty to inform the insured of all policy defenses it intends to rely upon, the court found that estoppel should not apply unless the insured has been prejudiced by the newly-asserted grounds for denial. *Id.* at 749–50 (citing *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 725 P.2d 217 (1986) as an example of such prejudice, where the insurer assumed defense of the case, but later dropped out in mid-litigation). Further, the court held that the insurer had not waived its later-asserted defenses, because no prejudice had been shown by Portal. *Id.* at 750. The court noted that, as an excess insurer, the insurer had no duty to defend, and no defense had been assumed by the insurer. *Id.; see also Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (holding that "an insurer waives defenses to coverage not asserted in its denial only if the insured can show misconduct by the insurer or detrimental reliance by the insured").

The facts are nearly identical in the instant case (*Portal Pipe Line* arose from the same underlying action as the instant case). The Defendants here, as excess carriers, had no duty to defend, nor did they undertake Plaintiff's defense. Plaintiff secured independent counsel from the start of litigation. Further, the grounds for denial likely to be advanced by Defendants have been known to Plaintiffs for years. No prejudice has been shown. Accordingly, Plaintiff's motion in limine shall be denied to the extent that it requests that Defendants be limited to asserting only those legal grounds for denial stated in their denial letter.

In sum, to show that they had a reasonable basis for denying Plaintiff's claim, Defendants may use only those facts known to them at the time of their denial, but they may apply those facts to legal theories formulated after their denial. However, only legal theories based upon the law in existence at the time of the denial may be utilized.

### D. May Defendants Present the Conflicting Opinions of Judge Hatfield and the Ninth Circuit Court as Evidence that Defendants Had a Reasonable Basis for Contesting Plaintiff's Claim?

In a second motion in limine, Plaintiff seeks to preclude Defendants from presenting Judge Hatfield's order deciding Defendants' motion for judgment on the pleadings, dated April 16, 1996. In his order, Judge Hatfield found that no coverage existed by virtue of Montana's public policy precluding an insured from recovering from his insurer for the insured's intentional acts. Based upon this finding, Judge Hatfield dismissed the case. A panel of the Ninth Circuit Court reversed, holding that Plaintiff is entitled to prove that the non-intentional claims were the major impetus in settling the underlying case.

The issue raised by Plaintiff's motion has been particularly difficult. There is strong incentive for allowing evidence of conflicting judicial opinions on coverage to show a reasonable basis for denial in the bad faith phase of the very same case. A recent California case articulates the seductive reasoning. In that case, the trial court granted summary judgment for the insurer, Hartford, based on a policy exclu-

sion. The appellate court reversed, finding a genuine issue as to the applicability of the exclusion. *See FRI Holdings, Inc. v. Hartford Cas. Ins.*, 83 Cal.Rptr.2d 29, 30 (1999). On remand, the insurer fared poorly on the bad faith claim. The insurer appealed, arguing there was a reasonable basis for its denial. The court agreed, stating:

> To say that Hartford *unreasonably* denied FRI's claim is rather like a two-justice majority in a Court of Appeal decision saying that an appeal is frivolous and awarding sanctions against the appellant's attorney, when their dissenting colleague agrees with the merits of the appellant's argument. With all due respect to ourselves and our prior decision, just because this court in its wisdom determined that the prior material exclusion might not have applied based on the papers supporting the summary judgment motion submitted to the trial court does not mean the trial judge was unreasonable in concluding what he did.... Our decision turned on the fine nuances.... But to say that Hartford was unreasonable in denying FRI's claim is to say that the trial judge was unreasonable in granting its summary judgment motion. We have more respect for the learned trial judge than to assume he was taken in by some facile argument of an insurance carrier. The judge was acting as a neutral decision maker trying to do impartial justice: That he could conclude that the exclusion applied must certainly establish a very strong presumption that Hartford itself was reasonable in denying the claim. Surely the starting point in any bad faith analysis is that judges are presumptively reasonable people, and if they, acting in a judicial capacity, conclude that an exclusion applies, it means that an insurer who concludes the same thing also acted reasonably. FRI has no evidence to rebut this strong, natural presumption.

*Id.* at 31 (reversing and remanding).

A presumption such as the one proposed above certainly has appeal. Resolution of a bad faith case, if positioned procedurally like the instant case, could almost always be made as a matter of law. But Montana law is not in accord with such a presumption, and this Court must follow Montana's rule. That rule may be found in *Walker v. St. Paul Fire & Marine Ins. Co.*, where the district court granted summary judgment for the insurer as to coverage, finding that the insured's claim was time-barred. 241 Mont. 256, 786 P.2d 1157, 1158 (1990). The Montana Supreme Court reversed, concluding that the filing of the administrative claim sufficed. On remand, the insurer moved for summary judgment on the bad faith claim, arguing that "a reasonably debatable issue regarding coverage had been established by the opposing rulings of the District Court and the Supreme Court...." *Id.* at 1159.

On appeal again, the Supreme Court reversed, "because of the presence of issues of material fact." *Id.* The court then recited the insured's allegations of bad faith, such as a failure to investigate, and a failure to respond to letters sent by the insured. The court reasoned that, because genuine factual issues regarding these violations had been established, summary judgment was inappropriate. *Id.*

One aspect of this reasoning is troublesome. As has been clearly established in cases decided after *Walker,* if an insurer can establish a reasonable basis for contesting the claim, the insurer has an affirmative defense—even if violations have been proven by the insured, even if actual fraud or malice have been shown. It is a complete defense. *Dees v. American Nat'l,* 861 P.2d at 153–54 (Gray, J., concurring). Thus, a genuine factual issue regarding the insurer's acts of bad faith seems to be irrelevant to the issue whether the insurer may establish a complete, affirmative defense. To illustrate the logical flaw, imagine precluding summary judgment on a statute of limitations defense because there are genuine factual issues regarding liability.

■ Perhaps the court in *Walker* was saying, without actually saying it, that a district court's opinion on coverage, later reversed, may simply never serve as per se proof of the insurer's reasonable basis. Nonetheless, it is clear that, in Montana, the issue whether an insurer had a reasonable basis for denying a claim may not be decided as a matter of law, no matter that the trial court found there was no coverage. Perhaps the Montana Supreme Court would agree with a Wisconsin court that concluded, in a bad faith case:

> The benefit of hindsight cannot lead us to conclude that the issue [of coverage] was not fairly debatable. Accordingly, the fact that ... the court ultimately entered a directed verdict on the issue of negligence is not conclusive as to the fair debatability of the issue when it was initially being reviewed by the insurance company.

*Rhiel v. Wisconsin County Mut. Ins. Corp.*, 212 Wis.2d 46, 568 N.W.2d 4, 8 (Ct.App.1997).

For these reasons, Plaintiff's motion in limine to preclude Defendants from presenting Judge Hatfield's opinion shall be granted. Again forecasting an unfavorable ruling, Defendants argue that, if this Court precludes them from relying on Judge Hatfield's order, Plaintiff should be likewise constrained as to that order and as to the Ninth Circuit's opinion reversing that order.

The Court agrees. For the reasons stated above, all parties are precluded from using Judge Hatfield's order, and the decision of the Ninth Circuit Court reversing that order, as evidence of Defendants' reasonable (or unreasonable) basis for denying Plaintiff's claim.

**E. Does Judge Hatfield's Ruling that Plaintiff may not Recover for the Amounts Paid by Travelers Indemnity Prove, as a Matter of Law, that Defendants had a Reasonable Basis for Contesting Plaintiff's Claim?**

Defendants have moved for summary judgment, arguing that they have shown a reasonable basis for contesting Plaintiff's claim. That basis is the June 1, 1999 order issued by Judge Hatfield concluding that Plaintiff is not entitled to recover from Defendants that amount contributed by Travelers Indemnity Company toward the settlement in the underlying case. Defendants argue that Judge Hatfield's order proves that they were not only reasonable, but also correct. And, Defendants argue, if they were correct in denying part of the claim, they were reasonable to deny it all (along this line Defendants also argue that they only disputed the *amount* of Plaintiff's claim, not the entire claim).

For the same reasons discussed above, it is now established that Judge Hatfield's order may not serve as evidence of reasonableness. Further, Judge Hatfield's order does not operate as "law of the case" in the manner Defendants wish it to.

Outside of a handful of cases, where the intentionality of the insured's actions underlying its insurance claim was proven as a matter of law by virtue of the criminal proceedings against the insured, the Montana Supreme Court has consistently held that whether an insurer had a reasonable basis to deny coverage is a factual issue not generally subject to disposition by summary judgment or directed verdict. *See, e.g., DeBruycker v. Guaranty Nat'l Ins. Co.*, 266 Mont. 294, 880 P.2d 819, 821 (1994) (disputes over the claims adjustment procedures for crop hail damage raised a genuine issue of material fact as to whether insured would be liable under the UTPA); *Dean v. Austin Mutual Ins. Co.*, 263 Mont. 386, 869 P.2d 256 (1994) (when a couple's home was destroyed by fire, and the couple was charged with arson, the issue whether the insurer had a reasonable basis to deny coverage while it was awaiting the outcome of the criminal case was not susceptible to a ruling as a matter of law).

In the instant case, this rule shall apply. Defendants' disingenuous argument that they contested only the amount of the claim, but not the entire claim, is merely

word play. A glance at the denial letter belies their assertion. The bad faith claim will go to the jury.

Accordingly, **IT IS ORDERED** that:

1) Plaintiff's motion in limine precluding Defendants' use of Judge Hatfield's Order of April 16, 1996 is **GRANTED;** said order may not be mentioned or discussed during the trial of the bad faith claim; further, no mention may be made of the Ninth Circuit Court's decision reversing said order;

2) Plaintiff's motion in limine precluding Defendants from using facts and law discovered or developed after Defendants' denial of coverage is **GRANTED in part;** only those facts known to Defendants and the law in existence at the time of the denial are admissible. HOWEVER, the motion is **DENIED in part;** Defendants may present legal theories not stated in their denial letter, provided the theories are based on the law in existence at the time of the denial;

3) Defendants' motion for summary judgment on count III based on the law of the case is **DENIED.** Defendants are precluded from mentioning Judge Hatfield's order of June 1, 1999 at trial of the bad faith claim.