TOWER INSURANCE COMPANY, INC., Plaintiff-Appellant,†

v.

Cindy CHANG, State Farm General Insurance Company, Amy Petersen and American Family Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 98–3594. Submitted on briefs August 20, 1999.—Decided September 29, 1999.*

(Also reported in 601 N.W.2d 848.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ronald W. Harmeyer* of *Fellows, Piper & Schmidt* of Milwaukee.

On behalf of the defendant-respondent Cindy Chang, the cause was submitted on the brief of *Todd M. Weir* and *Jeffrey J.P. Conta* of *Otjen, Van Ert, Lieb & Weir, S.C.* of Milwaukee.

On behalf of the defendant-respondent Amy Petersen, the cause was submitted on the brief of *Gary L. Dreier* of *First Law Group, S.C.* of Stevens Point.

Before Brown, P.J., Nettesheim and Anderson, JJ.

BROWN, P.J.   Here we are called upon to interpret an additional insured endorsement of an insurance policy that extends coverage to church members facing liability for church activities or activities performed on behalf of the church. The question presented is whether this clause encompasses fire damage to the church caused by two girls lighting a candle in the church restroom while they were on their way from services to confirmation class. We conclude that a reasonable person in the girls' position would expect to be covered in such a situation and thus affirm the trial court's grant of summary judgment dismissing the church's insurance company's subrogation suit against the girls and their insurers.

The material facts surrounding the fire are not in dispute. Amy Petersen and Cindy Chang are members of the church and were at the church on the night of the fire for three activities: a pancake supper, Ash Wednesday services and confirmation class. After helping serve the pancake supper, the girls participated in the Ash Wednesday service. Following the service they were directed to go to the educational wing of the building for confirmation class. Instead of going straight to the class, Chang and Petersen stopped at the ladies restroom lounge in the church basement. While there, they lit a candle and failed to extinguish it when they went to their class. The candle ignited some silk flowers and the fire spread and caused severe damage to the church.

The church was insured by Tower Insurance Co., which paid for the loss. Tower then filed suit against Chang, Petersen and their insurers for subrogation. The defendants moved for summary judgment, reasoning that Chang and Petersen were additional insureds under the policy Tower issued to the church and that

Tower could not subrogate against its own insureds. The trial court agreed and granted summary judgment to the girls and their insurers. Tower appeals.

At issue is the additional insured endorsement extending coverage to church members. It includes the following as insureds: "Any of your church members, but only with respect to their liability for your activities or activities they perform on your behalf." Tower argues that the above language is unambiguous, that whether the girls' lighting of the candle was an activity performed on behalf of the church is a fact question for the jury, and that no reasonable jury could conclude that such action was on behalf of the church. Furthermore, Tower urges, even if the girls were covered, Tower can still subrogate against them because their actions were criminal.

Chang and Petersen respond that the policy language is ambiguous and thus should be construed in their favor. Because Chang and Petersen are insureds, Tower may not pursue its subrogation claim against them. Alternatively, Chang and Petersen contend that Tower's subrogation claim must fail because they are immunized as volunteers under § 187.33, STATS. The trial court concluded that the second prong of the church member clause—that relating to activities performed on behalf of the church—was ambiguous. The trial court reasoned, however, that a reasonable person in the position of the insured "would understand the endorsement language to cover the activity of lighting the candle during the course of the girls' activities at the church." Because the trial court dismissed Tower's claim against the girls on the coverage issue, it did not reach their immunity argument.

We review the trial court's summary judgment de novo, applying the same methodology. *See Greene v. General Cas. Co.*, 216 Wis. 2d 152, 157, 576 N.W.2d 56, 59, (Ct. App. 1997), *review denied*, 216 Wis. 2d 612, 579 N.W.2d 44 (1998). Furthermore, the interpretation of an insurance policy is a question of law we review de novo. *See Kalchthaler v. Keller Constr. Co.*, 224 Wis. 2d 387, 393, 591 N.W.2d 169, 171 (Ct. App. 1999). When scrutinizing the policy language, "[t]he test is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean." *Maas v. Ziegler*, 172 Wis. 2d 70, 81–82, 492 N.W.2d 621, 625 (1992). If a term is susceptible to more than one reasonable interpretation, it is ambiguous. *See id.* at 79, 492 N.W.2d at 624. In that case, we construe the term in favor of coverage. *See id.* If the policy's terms are unambiguous, we merely apply them to the facts of the case. *See Kalchthaler*, 224 Wis. 2d at 393, 591 N.W.2d at 171.

Initially, we disagree with Tower's characterization of the coverage question as a disputed fact precluding summary judgment. The meaning of terms in an insurance contract is a question of law. *See Caraway v. Leathers*, 58 Wis. 2d 321, 328, 206 N.W.2d 193, 197 (1973). There is no dispute about what the girls did. The question is whether their actions were for a church activity or activity performed on behalf of the church, within the meaning of the policy. Whether their actions come under this umbrella is a matter of contractual construction requiring de novo review. *See Kalchthaler*, 224 Wis. 2d at 393, 591 N.W.2d at 171. The trial court was correct in deciding the coverage question on summary judgment.

Before discussing Chang and Petersen's coverage as church members, we would like to make clear what this case is not about; it is not about coverage under the policy's volunteer clause. The volunteer clause brings persons in under the policy as additional insureds when they are "acting at the direction of, and within the scope of their duties for you [the church]." Chang and Petersen lit the candle between service and class, not during their stint as workers at the pancake supper. Thus, cases addressing the scope of duties as a volunteer are inapposite. *See, e.g., All American Ins. Co. v. Burns,* 971 F.2d 438 (10th Cir. 1992).

Rather than coverage under the volunteer clause, this case is about coverage as church members for liability for church activities or activities performed on behalf of the church. Though we reach our conclusion based on different reasoning, we agree with the trial court that the church member coverage clause is ambiguous. What counts as a church activity? Does the phrase only cover those tasks done at the explicit direction of church officials, as when the girls draped a sash over the cross during the evening's services? Or does the phrase extend coverage to anything done in conjunction with a church function, such as the child of one church member injuring the child of another while playing between events at a church picnic? Because both interpretations are reasonable, the endorsement language is ambiguous and must be construed to afford coverage. *See Kalchthaler,* 224 Wis. 2d at 393, 591 N.W.2d at 171. Furthermore, the broader interpretation makes more sense. The girls were only at the church because of their participation in the church dinner, the church service and the confirmation class. A reasonable person in the girls' position—taking a short

break in the church building between one church event and another—would expect to be covered. Tower is correct that it is what the girls were doing and not where they were doing it that is important. But what they were doing was spending the evening participating in church events. The girls are additional insureds under the policy endorsement bringing in church members.

Before moving on to Tower's next argument, we pause to explain why we do not rely on the scope of employment cases Tower cites. The scope of employment terminology comes from the RESTATEMENT (SECOND) OF AGENCY § 219(1) (1958). *See Scott v. Min-Aqua Bats Water Ski Club, Inc.*, 79 Wis. 2d 316, 320, 255 N.W.2d 536, 538 (1977). The rule that the master is liable for the servant's torts is based upon two main considerations. First, the master is benefiting from the servant's performance of employment duties. *See* RESTATEMENT (SECOND) OF AGENCY § 219 cmt. a. Second, within the time of service, the master may exert some control over the servant's activities. *See id.* These factors justify the master's liability for the servant's wrongs that occur incidental to his or her employment. These same considerations do not, however, justify liability for actions taking place outside the scope of employment. Here, however, we do not have an agency relationship. The girls are members of the church, not its employees. The church has insured its members to protect them while they are participating in church activities. This decision to insure all members reflects the church's communal status; it is not one authority figure profiting from and able to control the actions of underlings. In the context of this case we do not find the scope of employment cases helpful.

Tower next argues that even if the girls are covered it should be allowed to pursue a subrogation claim

against them because the lighting of the candle was a criminal act. Tower relies on *Madsen v. Threshermen's Mutual Insurance Co.*, 149 Wis. 2d 594, 439 N.W.2d 607 (Ct. App. 1989), for the proposition that an insurer may seek subrogation from an insured when it is the insured's own intentional acts that cause the loss. In *Threshermen's*, the insureds were Robert and Nancy Madsen, husband and wife owners of a bar that burned down. Threshermen's denied the Madsens' claim, alleging that Robert had intentionally started the fire. *See id.* at 601, 439 N.W.2d at 609. Later, Threshermen's paid for the loss, but paid the holder of the land contract on the property without informing the Madsens. *See id.* The Madsens sued Threshermen's for bad faith for failure to timely pay the claim. Threshermen counterclaimed, seeking indemnification "for damages to the building based on Robert's fraud and arson." *Id.* at 604, 439 N.W.2d at 610. The jury found that Robert had set the fire intentionally. *See id.* at 602, 439 N.W.2d at 609. This court carved out an exception to the general rule that an insurer has no right of subrogation or indemnification against its own insured.

> In this instance . . . adhering to this principle would defeat a purpose of subrogation, which is to ultimately place the loss on the wrongdoer. Here, the wrongdoer and the insured are the same person, Robert. Thus, requiring Robert to reimburse Threshermen would appropriately place the loss on the wrongdoer. Moreover, Robert concedes that he should be required to reimburse Threshermen. . . .

*Id.* at 604–05, 439 N.W.2d at 610 (citation omitted). According to Tower, "*Threshermen's Mutual* is directly on point with this case."

675

We cannot agree. An examination of Tower's complaint reveals a significant difference between the present case and *Threshermen's* and thus the flaw in Tower's argument. In its attempt to make the cases seem parallel, Tower states that "[j]ust as in *Threshermen's Mutual, American Family and State Farm* [the girls' insurers] have plead that the actions of the alleged wrongdoers were intentional." (Emphasis added.) But that is why this case is not just like *Threshermen's*—Tower never pled an intentional tort, Threshermen's did. *See id.* at 604, 439 N.W.2d at 610 ("The amended counterclaim alleges that Threshermen is entitled to indemnification . . . for damages to the building based on Robert's fraud and arson."). Had Tower meant to allege arson, it should have done so. Instead, it confined its pleadings to negligence. It cannot now switch horses midstream. And though Tower makes much of the fact that the violation to which the girls pled guilty—negligent handling of burning material—is in ch. 941, STATS., which is titled "CRIMES AGAINST PUBLIC HEALTH AND SAFETY," we are not so impressed. The language of the particular statute itself controls, not the title of the chapter in which it is found. *See Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697, 700 (1996). Here, the misdemeanor in question is "Negligent handling of burning material." Section 941.10, STATS. Negligence is all the girls admitted, negligence is all Tower pled, and negligence is what insurance coverage is all about. Tower's reliance on *Threshermen's* is misplaced.

*By the Court.*—Judgment affirmed.