## Robert RHIEL, Plaintiff-Appellant,†

### v.

## WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION, Defendant-Respondent.

Court of Appeals

*No. 96–3398. Submitted on briefs April 28, 1997.—Decided June 3, 1997.*

(Also reported in 568 N.W.2d 4.)

†Petition to review dismissed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ardell W. Skow* of *Doar, Drill & Skow, S.C.,* Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Charles H. Bohl, Ross A. Anderson and Laurie J. McLeRoy* of *Whyte Hirschboeck Dudek S.C.,* Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Robert Rhiel appeals a grant of summary judgment dismissing his bad faith claim against Wisconsin County Mutual Insurance Company and allowing Wisconsin County Mutual to recover certain costs for facsimile and express mail charges incurred in the defense of this claim. Rhiel contends that the insurance company's failure to evaluate his claim and make

an offer of settlement prior to trial are violations of Wisconsin County Mutual's duty to its insured and constitute bad faith. Rhiel further contends that the facsimile costs are not recoverable because no provision is made in the cost statute for costs of faxing and that the express mail costs should not have been allowed by the trial court because the costs were unnecessary. Because we conclude that Rhiel's demand for the payment of policy limits was fairly debatable, the failure to evaluate and make an offer of settlement is not bad faith by the insurer. We further conclude that the costs of express mail were properly allowed by the trial court and that the objection to the facsimile costs was untimely and affirm the judgment.

The factual background giving rise to this appeal is somewhat complex but is essentially undisputed. Robert Rhiel is a police officer who was injured when he was in pursuit of a fleeing motorist. The motorist was attempting to flee from police pursuit when Rhiel was able to position his car in front of the fleeing vehicle. The fleeing vehicle ultimately collided with the rear end of Rhiel's vehicle and Rhiel alleges he sustained serious injury as a result of that collision.

The driver of the fleeing vehicle was uninsured and Rhiel therefore made a claim under the uninsured motorist coverage provided by Wisconsin County Mutual Insurance Corporation, his employer's insurer. Under the terms of that insurance contract, Rhiel is an insured and is entitled to the benefits provided for uninsured motorist coverage.

At trial, the court concluded the fleeing driver was completely negligent and that Rhiel was not negligent as a matter of law. The jury awarded damages in the amount of $270,329. The uninsured motorist coverage

under Wisconsin County Mutual's policy had a limit of $50,000.

Prior to trial, a demand and offer to settle for the policy limits was submitted by Rhiel to Wisconsin County Mutual. This case first came to Wisconsin County Mutual's attention when a demand for policy limits was made by Rhiel's first attorney. Subsequently, Rhiel hired different counsel who reiterated the demand for the limits of Wisconsin County Mutual's policy in settlement of Rhiel's claim. Legal authorizations were provided in accordance with Wisconsin County Mutual's request. Shortly thereafter, a lawsuit was filed seeking damages for injuries Rhiel received as a result of this accident and asserting that Rhiel was entitled to stack the uninsured motorist provisions of the policy because of the numerous Pierce County vehicles covered by the policy. Rhiel's position was that he was entitled to $50,000 on each of the county vehicles for virtually unlimited coverage for the damages sustained in this accident.

Crawford and Company, an independent adjuster, was retained by Wisconsin County Mutual to conduct an investigation into this accident. When it appeared that litigation was likely, Crawford recommended that Wisconsin County Mutual retain counsel and in response to this recommendation they retained attorney Beverly Wickert. Wisconsin County Mutual was advised of the facts surrounding this accident and that Rhiel had been in a similar situation involving a fleeing vehicle six months previously resulting in a similar accident. Moreover, the independent medical examinations conducted on behalf of Wisconsin County Mutual suggested a basis for contending that Rhiel had a preexisting condition as a result of the previous accident which was subsequently aggravated by a slip and fall

both of which were unrelated to this case. The doctor suggested that 10% of Rhiel's low back symptoms were related to pre-existing conditions, 45% to the previous accident and 45% to this case. Wisconsin County Mutual's counsel advised it that if the jury believed that there were pre-existing conditions and that only 45% of his current injuries were attributable to this accident the case had a value between $20,000–35,000. There was also a discussion as to whether some negligence might be attributable to Rhiel as a result of his previous conduct involving almost exactly the same circumstances which had resulted in an accident and injury.

Wisconsin County Mutual never evaluated the case for its settlement value or offered Rhiel any amount in settlement. Wisconsin County Mutual contended that it was satisfied that no offer less than $50,000 would be accepted and that the best course of action was to permit the jury to determine the extent of damages and to apportion the negligence. Indeed, Rhiel affirmed that no offer less than the policy limits would have been accepted.

The trial court granted summary judgment against Rhiel's claim that Wisconsin County Mutual had engaged in bad faith when it failed to evaluate the claim, establish settlement value or to extend an offer of settlement to its insured. The court believed that based upon the previous accident a jury could have apportioned negligence between Rhiel and the fleeing driver and that the evidence of a pre-existing condition could have permitted a jury to assign only a portion of Rhiel's injuries to this accident. The court concluded that these facts were sufficient to make the decision to pay the policy limits fairly debatable. The court therefore concluded that Wisconsin County Mutual had not

engaged in bad faith and granted summary judgment dismissing Rhiel's bad faith claim.

On the day scheduled for a hearing on costs, Rhiel objected to the imposition of costs associated with facsimile charges in the amount of $351.56, and express mail charges in the amount of $667. No objection to the facsimile charges had been made by Rhiel prior to the day of hearing. Rhiel contended that facsimile charges were not authorized by statute and, accordingly, could not be allowed and that the express mail charges were unnecessary and therefore should not have been allowed. The trial court found the express mail charges allowable and that the failure to object to the facsimile costs prior to the day of hearing waived Rhiel's right to challenge those costs, and permitted costs as claimed to be awarded.

The standard of review to be applied regarding an insurer's duty to its insured under uninsured motorist coverage presents a matter of law which this court addresses without deference to the trial court's determination. *See Continental Cas. Co. v. Homontowski*, 181 Wis. 2d 129, 133, 510 N.W.2d 743, 745 (Ct. App. 1993). Because the facts are essentially undisputed we are applying principles of law to undisputed facts which creates a de novo standard of review. *See State v. Keith*, 175 Wis. 2d 75, 78, 498 N.W.2d 865, 866 (Ct. App. 1993). The question raised in regard to the awarding of costs presents a matter of statutory interpretation which too is resolved without deference to the trial court. *Id.*

Rhiel contends that the duty of Wisconsin County Mutual is defined by a series of first-party bad faith cases already determined by our courts. *James v. Aetna Life & Cas. Co.*, 109 Wis. 2d 363, 326 N.W.2d 114 (Ct.

App. 1992); *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 541 N.W.2d 753 (1995). Wisconsin County Mutual, however, contends that the duty is defined differently under *Redlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 345 N.W.2d 874 (1984). Wisconsin County Mutual contends that while *Redlein* does not specifically analyze the duty owed to its insured under an uninsured motorist provision, the case clearly identifies the unique relationship existing in this type of claim and asserts that the parties are adverse when analyzing uninsured motorist claims because liability is predicated on the conduct of a third party and the resulting damages. Because there is no duty to pay until the third party's conduct is evaluated, Wisconsin County Mutual contends that the duty owed by it toward its insured should be analyzed as a third-party claim.

We need not resolve this dispute in disposing of the issue before us. We note, however, that this is a first party claim even though liability may be predicated on the conduct of a third party. We are reluctant to conclude, however, that under all circumstances the duty owed by an insurer to its insured under claims for uninsured motorist should be analyzed as a first party claim. Because resolution of this dispute is unnecessary to our analysis, we need not develop this issue further.

Rhiel contends that the trial court erred in framing the issue as whether paying the demand for the policy limits of $50,000 was fairly debatable. He contends that the failure to evaluate the settlement value of the case and to present an offer are sufficient to establish Wisconsin County Mutual's bad faith. While the insurer does have a duty to investigate, evaluate and make a good faith effort to negotiate a claim, *Polling v.*

*Wisconsin Physicians Serv.*, 120 Wis. 2d 603, 608–09, 357 N.W.2d 293, 297 (Ct. App. 1984), we conclude that under the unique circumstances of this case these steps were unnecessary.

When the issue is defined as whether an insurer will pay the policy limits, the evaluation of a claim and the presentation of an offer lower than the policy limits does nothing to advance the insured's interest in obtaining a prompt and fair resolution. In this case, the parameters of negotiation were clearly defined by the insured to require the payment of the policy limits. The demands for the policy limits were unequivocal and were presented twice to the insurer. Suit was commenced immediately following the demand for policy limits made by Rhiel's second attorney and the negotiations dealt with the stacking of other policies to increase the policy limits available rather than addressing the possibility of settling for under $50,000. Throughout the case, Rhiel steadfastly took the position that only the $50,000 policy limits would be an acceptable settlement

Under these circumstances, the only issue the insurer was required to address was whether the policy limits should be paid. The debatability of such payment is the sole basis to determine whether the insurer's failure to offer the policy limits in settlement constituted bad faith. We caution that an insurer who dispenses with the investigation, evaluation and negotiation of an uninsured motorist claim does so at its peril. If the claimant is attempting to negotiate a settlement and the insurer neither evaluates the claim in good faith nor presents an offer, a fact finder may find bad faith. The mere existence of a demand for policy limits is not sufficient to excuse the insurer from its duties to evaluate and negotiate a fair settlement of the

claim. It is only in the rare circumstance where the claimant forecloses negotiation for anything lower than policy limits that the focus moves from evaluation and negotiation to determining whether payment of the policy limit demand is fairly debatable. Failing to properly assess the negotiating posture of the insured places the insurer in jeopardy if it elects not to evaluate and attempt to negotiate a fair and reasonable settlement.

In this case, no offer under the policy limits would have been resolved the matter. The plaintiff repeatedly confirmed his position that no offer other than the $50,000 policy limits would be accepted. The doctrine of good faith does not require an insurer to engage in unproductive and irrelevant conduct solely for the sake of form. The trial court concluded the proper analysis was whether the demand for policy limits was fairly debatable. If the insurance company had a reasonable belief that any offer for less than the policy limits was fruitless, the offer would be unnecessary. If, however, the demand for $50,000 was not fairly debatable the company's obligation was to offer its policy limits in settlement of the claim at the earliest reasonable opportunity. Whether the claimant is prepared to negotiate is a factual determination that is normally reserved for the finder of fact. In this case, however, the evidence conclusively demonstrates that Rhiel would not participate in negotiations and that only payment of the full policy was acceptable. The trial court, therefore properly framed the issue as whether payment of the policy limits was fairly debatable.

There is little question that the damages were significant and would undoubtedly exceed the limits to the policy if the jury was persuaded that the damages emanated from this accident. There was medical evi-

dence, however, both from their independent medical exam and from Rhiel's medical history to indicate that a reasonable jury might conclude that a significant portion of these injuries were unrelated to the accident in question. In addition, Rhiel's almost identical conduct in an accident six weeks prior which resulted in personal injury was, at least, arguably evidence upon which a jury could conclude that some degree of negligence should be assessed against Rhiel. While the trial court ultimately directed a verdict on the question of negligence, it was not unreasonable for the insurance company to contend that the apportionment of negligence was an appropriate jury issue. Merely because in hindsight Wisconsin County Mutual lost that argument and the court ultimately directed a verdict does not mean that its position in regard to this issue could not be advanced to the trial court. Both because the amount of damages flowing from this accident were in issue and that there was some possibility that negligence would be apportioned, we conclude that the question as to whether this claim required the payment of the policy limits was fairly debatable.

We emphasize that this conclusion is based on the unique facts of this specific case. We do not mean to excuse an insurance company from failing to offer to its insured the policy limits in an uninsured motorist claim when it is clear that the policy limits should be offered. Here, however, where both negligence and damages were legitimately in issue and there was a reasonable basis to believe that the jury could return a verdict less than the policy limits, Wisconsin County Mutual did not breach its duty of good faith in deciding that it was fruitless to engage in negotiations with Rhiel and permitting damages to be assessed by a jury.

Whether an issue is fairly debatable is based upon the information available to the insurance company at the time the demand is presented. *See Madsen v. Threshermen's Mut. Ins. Co.*, 149 Wis. 2d 594, 614, 439 N.W.2d 607, 614 (Ct. App. 1989). The benefit of hindsight cannot lead us to conclude that the issue was not fairly debatable. Accordingly, the fact that the jury concluded all the damages were the result of this accident and the total award was substantially in excess of the policy limits or that the court ultimately entered a directed verdict on the issue of negligence is not conclusive as to the fair debatability of the issue when it was initially being reviewed by the insurance company.

Rhiel next seeks to challenge the awarding of costs for facsimile charges and for express mail charges that were incurred by Wisconsin County Mutual as a result of the bad faith claim which was dismissed by the trial court. Objections to the taxation of costs are controlled by § 814.10(3), STATS., which provides: "The party opposing such taxation, or the taxation of any particular item shall file with the clerk a particular statement of the party's objections . . . ." Subsection (4) requires for court review that a motion of objections to the costs be made and served within ten days after the taxation and specifically states: "No objection shall be entertained [by the court] on review which was not made before the clerk, except to prevent great hardship or manifest injustice." The trial court concluded that the objection to the facsimile charges was untimely because no formal objection had been made to the clerk within ten days of taxation. In fact, the first time the objection was asserted to the facsimile costs was in the hearing before the court. There is no dispute that this objection was not timely raised and the court was

within its discretion in not considering an untimely objection.

■

A timely objection was made to the express mail charges and the trial court considered them to be allowable. Express mail charges are explicitly allowed under § 814.04, STATS. Rhiel argues that the express costs were not necessary and are not recoverable, but does not provide record support for these assertions. Wisconsin Mutual argues that many of the express charges were made because of short briefing schedules and last minute changes or cancellations. Reviewing the record, we conclude that the express charges were reasonable in light of the deadlines facing the parties.

*By the Court.*—Judgment affirmed.