Bryan CASPER, Susan Casper, Michael Casper, a minor, by his Guardian ad Litem, Thomas Casper, a minor, by his Guardian ad Litem, Sara Janey, a minor, by her Guardian ad Litem and Sharon Janey, Plaintiffs-Respondents-Cross-Appellants,

v.

AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent,†

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Milwaukee County Department of Health & Social Services, Involuntary-Plaintiffs,

CLAIMS MANAGEMENT SERVICES, INC., Intervenor.

Court of Appeals

*No. 2015AP2412. Submitted on briefs January 17, 2017. —Decided May 16, 2017.*

2017 WI App 36

(Also reported in 897 N.W.2d 429.)

† Petition for Review Filed.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Ross A. Anderson*, *Gabrielle B. Adams*, and *Anthony Anzelmo* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the brief of *Charles W. Kramer* and *Monte W. Weiss* of *Weiss Law Office, S.C.* of Mequon.

Before Brennan, P.J., Brash and Dugan, JJ.

¶ 1. BRENNAN, P.J. American International South Insurance Company (AISIC) appeals an order granting plaintiffs' summary judgment motion and ordering AISIC to pay $684,499.14 in interest on its delayed payment on the underlying claim in this case. Wisconsin Stat. § 628.46(1) (2015–16)[1] requires an insurer given proper notice to pay such interest when it does not timely pay claims unless "the insurer has reasonable proof to establish that the insurer is not responsible for the payment[.]" The requirement applies to claims by insureds and claims by third parties who satisfy certain conditions as set forth in *Kontowicz v. American Standard Insurance Co. of Wisconsin*.[2] The trial court concluded that plaintiffs, who are third-party claimants, were entitled to such interest

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

[2] *Kontowicz v. American Standard Ins. Co. of Wis.*, 2006 WI 48, ¶ 47, 290 Wis. 2d 302, 714 N.W.2d 105, clarified on denial of reconsideration, 2006 WI 90, ¶ 53, 293 Wis. 2d 262, 718 N.W.2d 111.

because in 2007 they satisfied the *Kontowicz* conditions as to the underlying claim and because AISIC was unable to provide "reasonable proof to establish" that it was not responsible for the payment.

¶ 2. AISIC argues that both these conclusions are incorrect. AISIC also argues that WIS. STAT. § 628.46 does not apply where an insurer has contractual duties to multiple insureds, as AISIC does here, because those legal obligations make it impossible for AISIC to satisfy the statute. Plaintiffs cross-appeal, arguing that in 2005 they satisfied § 628.46's requirements as interpreted in *Kontowicz* and accordingly they are entitled to more interest than the trial court awarded them. We reject those arguments and affirm the order.

## BACKGROUND

¶ 3. Plaintiffs are Bryan Casper ("Casper"), Susan Casper, Michael Casper, Thomas Casper, Sara Janey and Sharon Janey (collectively, "the Caspers").[3] In May 2003, the Casper family's minivan, which had stopped at an intersection for a red light, was rear-ended by AISIC's insured, Mark Wearing, who was driving a tractor-trailer. *Casper v. American Int'l S. Ins. Co. (Casper II)*, 2011 WI 81, ¶ 12, 336 Wis. 2d 267, 800 N.W.2d 880. All five occupants of the minivan were injured, some catastrophically—Sara Janey suffered injuries including a traumatic brain injury, and Michael Casper suffered a spinal injury that rendered

---

[3] The six plaintiffs consist of the five occupants of the Caspers' vehicle—the four members of the Casper family and Sara Janey—and Sara Janey's mother, Sharon Janey. We refer to the plaintiffs collectively as "the Caspers." We refer to the driver, Bryan Casper, as "Casper" when referring to him individually.

him quadriplegic at age fifteen. Past itemized special damages in medical payments for the five exceeded $643,000 on September 12, 2005; and future special damages for Michael Casper alone were estimated at seven to twelve million dollars.

¶ 4. At the time of the crash, Wearing was an employee of two firms and was making a delivery on behalf of AIT, a customer of one of his employers. *Id.*, ¶¶ 15, 17. Wearing was driving while under the influence of several prescription drugs, *id.*, ¶ 14, in violation of federal trucking safety regulations. The route he was driving was a 536–mile overnight route that was longer than federal trucking safety regulations permit, *id.*, ¶¶ 17, 18. Wearing testified at a deposition that he did not see the minivan prior to the collision. An off-duty officer who witnessed the collision testified at a deposition that just before the collision the minivan driven by Casper had not accelerated normally from the intersection when the light turned green, and an accident reconstruction expert retained by defendants concluded based on that testimony that the accident "would likely have been avoided" if Casper had accelerated immediately when the light turned green.

¶ 5. The Caspers brought the underlying suit against seven named defendants and their insurers, alleging negligence. With the exception of AIT, the individuals and companies named as defendants were all insureds of AISIC. AISIC's policy limit was one million dollars, and AISIC's policy had a provision stating that "the most [AISIC] will pay for the total of all damages resulting from any one 'accident' is the Limit of Insurance for Liability Coverage found in the Declarations."

¶ 6. From 2004 through 2012, the case proceeded through extensive litigation, appeals,[4] a remand to the trial court, and mediation. Notwithstanding the accident reconstruction expert's opinion, AISIC's internal claim evaluations and litigation plan reflected the expectation that this was a policy limits case. This expectation was based on the high damages and the fact that five of the six defendants were AISIC's insureds. The possibility of some level of contributory negligence on Casper's part was assumed. The initial AISIC claims adjuster concluded that liability was "unfavorable," that the damages would far exceed the policy limits, and that this was a "policy limits case," and in their depositions the three subsequent AISIC claims adjusters did not dispute his assessment.

¶ 7. AISIC offered to settle for the policy limits in return for a release, but plaintiffs declined the settlement on those terms. The parties ultimately settled for the policy limits, which AISIC paid on November 22, 2012. The settlement released all defendants.

¶ 8. Following settlement, the sole issue that remained unresolved was the question of whether the Caspers were entitled to Wis. Stat. § 628.46 interest. After further discovery and briefing, the Caspers moved for summary judgment on that question. The parties agreed "that there are no genuine issues of material fact to prevent [the trial court] from determining whether AISIC is liable for Wis. Stat. § 628.46 interest."

¶ 9. The trial court granted the summary judgment motion, holding that the Caspers had satisfied

---

[4] *Casper v. American Int'l S. Ins. Co. (Casper I)*, 2010 WI App 2, 323 Wis. 2d 80, 779 N.W.2d 444; *Casper v. American Int'l S. Ins. Co. (Casper II)*, 2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880.

the conditions set forth in *Kontowicz* for third-party claimants. It held that the condition that there is no question of the insured's liability was satisfied because, given the fact that Wearing was driving while under the influence of prescription drugs, no reasonable jury would find that he did not bear the majority of the liability for the accident. It held that the sum certain condition was satisfied by the Caspers' Itemization of Special Damages, submitted September 12, 2005, which included medical expenses and other damages for each plaintiff. And it held that the written notice condition was met on February 7, 2007, the date on which plaintiffs sent a letter demanding payment of AISIC's one million dollar policy limit and noting that "the damages sustained by the Plaintiffs . . . well exceed the policy limit[.]"

¶ 10. Having determined that plaintiffs had satisfied the *Kontowicz* conditions as third-party claimants, the trial court turned to the question of whether AISIC had reasonable proof that it was not responsible for the payment. The trial court rejected AISIC's argument "that an insurer has reasonable proof of non-responsibility any time insurers can mount a non-frivolous defense." It concluded that the defenses AISIC argued would not have "convinced a reasonable insurer that it may not be responsible for the payment," applying the standard set forth in *Kontowicz*. It concluded that in light of the "excessive damages" present in this case, even if defending the claim resulted in an apportionment of liabilities among the parties, no "reasonable apportionment" would bring the claims below the policy limit. It noted that coverage was "not fairly debatable" and that AISIC had filed no coverage motion. For these reasons, it concluded

that AISIC had not shown reasonable proof that it was not responsible for the payment.

¶ 11. Concluding that the conditions had been met as of February 7, 2007, the trial court calculated interest from thirty days after that date, with three days added to account for the notice being served by mail, consistent with WIS. STAT. § 801.15(5)(a) and *Kontowicz*, 290 Wis. 2d 302, ¶ 53 n.18. At a rate of twelve percent interest on the one million dollar payment, beginning March 12, 2007, and ending November 22, 2012, the date AISIC made payment, the interest came to $684,499.14.

¶ 12. AISIC appealed the award of interest, and the Caspers cross-appealed, arguing that they satisfied the conditions in 2005, not 2007, and that the interest must be re-calculated.

¶ 13. For the reasons given below, we reject these arguments and affirm.

## DISCUSSION

### I. Standard of review and relevant legal principles.

#### A. Summary judgment principles.

¶ 14. This is an appeal of an order granting summary judgment. When a party seeks summary judgment, "[t]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "When this court is called upon to

review the grant of a summary judgment motion . . . we are governed by the standard articulated in section 802.08(2), and we are thus required to apply the standards set forth in the statute just as the trial court applied those standards." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987) (citation omitted).

██

¶ 15. In opposing summary judgment here, AISIC does not argue that there is a genuine issue as to any material fact. Rather, AISIC argues that the trial court erred in applying Wis. Stat. § 628.46 to the facts because AISIC had knowledge of a fact—namely that Casper failed to immediately accelerate at the green light—that created "reasonable proof" that AISIC was not responsible for payment of the claim, and this, AISIC argues, precludes an award of interest as a matter of law. Although there is no factual finding in the record that Casper failed to immediately accelerate at the green light, no party disputes it[5] for the purposes of analysis of the legal question on the "reasonable proof" defense to the claim payment under the statute. Therefore, the question we address is whether Wis. Stat. § 628.46 applies to these facts.[6] That ques-

_____

[5] The Caspers do assert that the defense expert's opinion fails to provide a basis for contributory negligence because in his deposition, the expert stated that he had "no opinions one way or the other" when asked whether he was "critical of Mr. Casper for not moving forward when the light turned green[.]" They contend that this means that the expert had no opinion "about the negligence of Bryan Casper" and that there is thus "no evidentiary support" for finding him negligent.

[6] AISIC's first two arguments challenge the trial court's application of Wis. Stat. § 628.46 to the facts here. AISIC's third argument is essentially that for policy reasons § 628.46 does not apply to any case where an insurer has multiple

tion presents a question of law we review *de novo. See Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 2000 WI 79, ¶ 17, 236 Wis. 2d 384, 612 N.W.2d 709.

## B. Law governing interest on untimely paid insurance claims.

¶ 16. An insurer's liability for interest on claims that are overdue is created by Wis. Stat. § 628.46(1). It defines overdue claims as follows:

> A claim shall be overdue *if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . .* Any payment shall not be deemed overdue *when the insurer has reasonable proof to establish that the insurer is not responsible for the payment,* notwithstanding that written notice has been furnished to the insurer.

*Id.* (emphasis added).

¶ 17. Several cases provide guidance on the interpretation of the statute. First, in *Fritsche v. Ford Motor Credit Co.*, this court flatly rejected the insurer's argument that "the only way damages could be determined was by trial" or a settlement agreement, and that without such a determination, no interest could be awarded. *See Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 305, 491 N.W.2d 119 (Ct. App. 1992). This court stated that to accept such a view "would effectively repeal the statute." *Id.* The court stated that, for purposes of the timely payment of claims statute, the time that the insurer has "proof of loss or equivalent evidence of the loss" can be *"far in advance* of a judgment or award." *Id.* (emphasis added).

insureds. We address the policy argument in section III below.

¶ 18. In *Kontowicz*, 290 Wis. 2d 302, ¶ 48, our supreme court answered the question of whether WIS. STAT. § 628.46 interest can be awarded in cases of third-party liability claims for personal injury such as here. It held that the statute's language—"every insurance claim"—encompassed such claims. *Id.*, ¶ 27. However, it limited the awards of § 628.46 interest to third-party claimants "to only those situations in which three conditions to trigger interest are met." *Id.*, ¶ 48. The conditions it imposed raise the bar for such claimants. Rather than merely requiring "written notice of the fact of a covered loss," *see* § 628.46(1), and of the amount, as for first-party claimants, *Kontowicz* required third-party claimants to show first, that there is "no question" of the insured's liability; second, that there is a "sum certain" of plaintiffs' damages; and third, that the insurer received written notice of liability and the "sum certain" damages. *Id.*

¶ 19. *Kontowicz* noted that the statute "does not apply" if the insurer has reasonable proof it is not responsible, and the court defined "reasonable proof" for purposes of the statute as "that amount of information which is sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a claim." *Id.* It further noted that the question of reasonable proof sufficient for purposes of this statute is "generally equated" "with whether the 'coverage issue was fairly debatable." ' *Id.* (citation omitted). *See also Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Mut. Ins. Co.*, 146 Wis. 2d 470, 484–85, 431 N.W.2d 689 (1988) (once adequate notice has been given, "[t]he only way an insurer can avoid an interest assessment under sec. 628.46(1) is when it had reasonable proof that it was not responsible for the payment.").

¶ 20. Where damages are high and policy limits are low by comparison, the potential for contributory negligence by a party is not, in itself, sufficient to constitute "reasonable proof" that will defeat an award of interest. In *Kontowicz*, this principle was acknowledged without further elaboration as follows: "[D]ue to the severity of the injury suffered by Kontowicz even the maximum reduction allowed by law [for negligently failing to wear a seatbelt] would not appear to be sufficient to bring her claim below the . . . policy limit." *Kontowicz*, 290 Wis. 2d 302, ¶ 53 n.17. Likewise, in *Dilger*, this court affirmed the trial court's award of interest[7] on the basis that the *Kontowicz* conditions were met where "[t]he [trial] court found that [plaintiff] had asserted estimates of damages that far exceeded [the] policy limits, *regardless of any potential contributory negligence* on [plaintiff's] part[.]" *See Dilger v. Metropolitan Prop. & Cas. Ins. Co.*, 2015 WI App 54, ¶ 15, 364 Wis. 2d 410, 868 N.W.2d 177 (emphasis added).

## II. The Caspers have satisfied the *Kontowicz* requirements for interest under Wis. Stat. § 628.46(1).

¶ 21. AISIC contends that the Caspers failed to satisfy any of the three *Kontowicz* conditions, but its

---

[7] We note that this court in *Dilger* reviewed the trial court's decision as to an award of interest under the clearly erroneous standard. *See Dilger v. Metropolitan Prop. & Cas. Ins. Co.*, 2015 WI App 54, ¶¶ 10, 12, 364 Wis. 2d 410, 868 N.W.2d 177. *Dilger* was not a summary judgment case. Unlike *Dilger*, this case involves a grant of summary judgment, and the parties do not dispute that independent review of the trial court's grant of summary judgment and application of the statute to the facts is appropriate here.

principal argument is that it had reasonable proof that it was not obligated to pay its policy limits earlier and is not responsible for the prejudgment interest under the statute. We note that AISIC does not make any coverage or exclusion argument under the policy.[8] Instead, it focuses on the claimant's contributory negligence (a statement from an eyewitness that Casper appeared to not immediately accelerate when the light turned green and one from an accident reconstruction expert that if Casper had accelerated, the accident "likely would have been avoided") and also the prospect of potential contributory negligence from another defendant. Accordingly, AISIC argues that when combined, these facts rebut the condition in *Kontowicz* that there be no question of AISIC's liability and also form the "reasonable proof" that it was not responsible for payment.

¶ 22. Before we address AISIC's contributory negligence and liability apportionment theories, we will first consider the *Kontowicz* "sum certain" and "written notice" conditions.

---

[8] Where courts have found reasonable proof of non-responsibility, it has typically been based on coverage and exclusions under the policy language. For example, the insurer was held to have reasonable proof of non-responsibility where its policy contained a relevant exclusion. *See Universal Mort. Corp. v. Wurttembergische Versigherung, AG*, No. 98–CV-1142, unpublished slip op. (July 30, 2010 E.D. Wis.) (reasonable proof where claim falls squarely within exclusion). Insurers have also been held to have reasonable proof of non-responsibility where the policy provision was ambiguous. *See, e.g., Froedtert Mem'l Lutheran Hosp., Inc. v. National States Ins. Co.*, 2009 WI 33, ¶¶ 61, 64, 66, 317 Wis. 2d 54, 765 N.W.2d 251. AISIC does not make any arguments that are based on the policy language.

### A. The "sum certain" condition: The Caspers presented a sum certain amount of damages.

█

¶ 23. In order to be entitled to prejudgment interest, third-party claimants must show that there was a sum certain amount of damages. *Kontowicz*, 290 Wis. 2d 302, ¶ 48.

█

¶ 24. The Caspers argue that they met the sum certain condition when they itemized past and future special damages[9] as of September 12, 2005, on page nine of their witness list, entitled "Plaintiffs' Itemization of Special Damages," as follows:

Past Specials

1. $319,312.31 the amount of medical payments to or on behalf of Michael Casper;

2. $38,290.26 the amount of the medical payments to or on behalf of Thomas Casper;

3. $15,562.22 the amount of the medical payments to or on behalf of Susan Casper;

4. $22,527.78 the amount of the medical payments to or on behalf of Bryan Casper;

5. $248,062.66 the amount of the medical payments to or on behalf of Sara Janey.

---

[9] Special damages are " 'those representing the victim's *actual pecuniary losses*' as opposed to general damages, which are those 'not readily susceptible to direct proof or easily estimable,' and include pain and suffering and injury to reputation." *State v. Rouse*, 2002 WI App 107, ¶ 8, 254 Wis. 2d 761, 647 N.W.2d 286 (citation omitted) (emphasis added).

397

Future Specials

1. Michael Casper—Lifetime Care—$6,809,714.00 —$11,991,751.00

2. Michael Casper—Loss of Earning Capacity—Present Value $1.5 million—$2.0 million.

¶ 25. The Caspers also argue in the alternative that the sum certain condition is satisfied because the one million policy limit is the sum certain—"an actual dollar amount"—that they demanded in a February 7, 2007 letter to AISIC. That letter made the following demand:

> It is . . . my understanding that there is a $1,000,000.00 limit available under your Client's policy. At this time, the Plaintiffs make demand of American International South Insurance Company to pay its policy limit.
>
> American International South Insurance Company has been a party to this litigation since 2004 and is well aware of the liability of its insureds as well as the full extent of the damages sustained by the Plaintiffs. Obviously, the damages sustained by the Plaintiffs, including those of the subrogated carriers, well exceed the policy limit provided for in the American International South Insurance Company policy. This is a rear-end accident and neither liability nor the damages sustained by the Plaintiffs jointly and Michael Casper individually are not in dispute. As a result, pursuant to WIS. STATS., § 628.46, this claim is overdue.

¶ 26. AISIC argues that the sum certain condition is not satisfied for various reasons. First, it argues that as a matter of law "this [Itemization of Special Damages] alone is insufficient to trigger the application of WIS. STAT. § 628.46." For this proposition, AISIC points us to *Miller v. Safeco Insurance Co. of America*,

761 F. Supp. 2d 813, 830 (E.D. Wis. 2010), aff'd, 683 F.3d 805 (7th Cir. 2012). We find no support for the proposition that an itemized list of incurred and future special damages is insufficient to constitute a "sum certain" for purposes of applying § 628.46. *Miller* did not involve such a list, and the court there, in fact, *did* award § 628.46 interest. *See id.* at 829 ("Safeco lacked reasonable proof of non-responsibility for payment, and payment owed to the Millers is deemed overdue for purposes of § 628.46"). Further, the question it addressed in the section to which AISIC points us is not *whether* the amount plaintiff provided satisfied the "sum certain" condition, but *when* written notice of damages was provided such that the payment became overdue. *Id.* at 830. Besides, *Miller* concerns a first-party insured claim under § 628.46, *id.* at 829, so the court simply applied the statute, and there was no analysis of the *Kontowicz* conditions at all.

¶ 27. AISIC also argues that "the witness list only identified present special damages incurred by Plaintiffs in an amount close to 50% of AISIC's policy limits." That is a misleading statement. The itemization of special damages here included out-of-pocket specials of $684,499.14, but it also identified future special damages of between $6.8 million and $11.9 million. AISIC compares the damages amount in the itemized special damages document with that in *Dilger*, 364 Wis. 2d 410, ¶ 8, where this court found the sum certain condition satisfied, and AISIC argues that this court did so in that case only because "the evidence supporting the amount demanded by the plaintiff in *Dilger* well exceeded the insurer's policy limits." The dispute in *Dilger* was over whether the insurer had reasonable proof of non-responsibility; the parties did not dispute whether the sum certain con-

399

dition was satisfied. In any event, *Dilger* supports the contrary position: the amount that plaintiffs had submitted for payment was based on the *same type of past and future damages as are presented here:*

> Dilger demanded payment of the full $1.5 million of Druecke's insurance policies plus W<small>IS</small>. S<small>TAT</small>. § 628.46 interest, referencing Dilger's medical treatment records, past earning losses, and *future earning losses* totaling between $1.6 million and nearly $1.85 million.

*Id.*, ¶ 8 (emphasis added).

¶ 28. In short, AISIC has presented no case law that persuades us that more is required to establish a sum certain amount than what the Caspers presented here. To the extent that AISIC may be arguing that the amounts provided are not a total of all damages, we note that the amount provided represented at least nine times the policy limit of one million dollars, and more detail would have been superfluous. For purposes of application of the *Kontowicz* condition, the amounts in the itemization of special damages showing medical treatment costs for all five plaintiffs and future special damages as to Michael Casper satisfied the sum certain condition.

**B. The "written notice" condition: The Caspers' 2005 itemization of special damages and their 2007 demand letter together provided written notice of both liability and damages.**

¶ 29. *Kontowicz* also requires that third-party claimants must have provided written notice of both liability and the sum certain amount of damages. *Kontowicz*, 290 Wis. 2d 302, ¶ 2. The determination of what constitutes this written notice has the effect of

setting the date at which the payment became overdue and consequently the date from which interest is calculated. *Id.*, ¶¶ 53, 54.

### 1. The complaint does not satisfy the *Kontowicz* condition of written notice.

██

¶ 30. The Caspers argue that they satisfied the written notice condition when they filed the complaint on July 2, 2004. They argue that the complaint provided "written notice of *the fact of a covered loss* and of the amount of the loss" as required by WIS. STAT. § 628.46(1) ("[A] claim shall be overdue if not paid within 30 days after the insurer is furnished *written notice of the fact of a covered loss* and of the amount of the loss.") (emphasis added). They note that the statute does not say anything about certainty.

¶ 31. This argument fails. As discussed above, in holding that third-party claimants are eligible for interest awards under WIS. STAT. § 628.46, *Kontowicz* explicitly overlaid the statute with specific conditions for such claimants, one of which required the claimants to prove there is no question of liability for payment. Casper's complaint preceded AISIC's answer, defenses and both sides' discovery, and it therefore cannot satisfy this *Kontowicz* condition.

### 2. The Itemization of Special Damages and the demand for payment satisfied the "written notice" condition.

██

¶ 32. Like the trial court, we conclude that the amount of the sum certain was set forth in plaintiffs'

September 2005 itemization of special damages and their 2007 demand letter, which, taken together, satisfy the sum certain *Kontowicz* condition. It follows that the two documents together also satisfy the condition of "written notice."

¶ 33. AISIC argues that the demand letter is "highly ambiguous" and insufficient because it does not include various details, and AISIC raises a litany of questions that the demand letter does not answer. But we note that the equivalent plaintiff's letter referenced in *Kontowicz* is similar to Caspers' in that it "demand[s] the payment of policy limits, together with Wis. Stat. § 628.46 interest." *Kontowicz*, 290 Wis. 2d 302, ¶ 7. We quoted the relevant part of the Caspers' demand letter above. It states that the policy limit is one million dollars, it states that the damages "well exceed the policy limit," and it demands payment on the grounds that liability and damages are not in dispute. AISIC cites no authority for the proposition that all of the questions it raises have to be answered by the demand letter in order for it to be adequate for purposes of "notice" under *Kontowicz,* and it is clear that the *Kontowicz* court was satisfied that the letter it described satisfied the written notice requirement because it concluded that interest began running thirty-three days afterward. *Id.*, ¶¶ 7, 53 (citing letter dated July 30, 2001, and starting 30–day clock for interest as of August 2, 2001). A requirement of notice is merely that, and the demand letter and itemization of special damages put AISIC on notice in a way that satisfies the statute as interpreted by *Kontowicz.*

### C. The "no question of the insured's liability" condition: The Caspers demonstrated that there is "no question of liability on the part of the insured."

■

¶ 34. The next two steps of the analysis are distinct, and courts applying Wis. Stat. § 628.46 to facts have treated them as distinct inquiries. AISIC has merged the analysis and argues that the existence of contributory negligence requires us to answer them both in its favor. AISIC argues that its knowledge of Bryan Casper's potential contributory negligence defeats the condition that Caspers show "no question" of liability on the part of AISIC's insured, and that it also constitutes "reasonable proof" that AISIC was not responsible for payment such that interest is not awardable.

¶ 35. *Kontowicz* held that for third-party claimants to be awarded Wis. Stat. § 628.46 interest, there can be "no question of liability on the part of the insured." *Kontowicz*, 290 Wis. 2d 302, ¶ 48. The trial court found that the Caspers had satisfied this condition based principally on the overwhelming evidence of the negligence of Wearing. The trial court concluded that "upon hearing that Mr. Wearing was under the influence of prescription drugs, no reasonable jury would find" that anyone other than Wearing "would bear 'the majority of the causal negligence.' "

¶ 36. AISIC argues that this was error because "[a] final determination as to the liability of each AISIC insured was not certain[.]" AISIC cites to the language in *Rhiel v. Wisconsin County Mutual Insurance Corp.*, 212 Wis. 2d 46, 55, 568 N.W.2d 4 (Ct. App. 1997), in which this court concluded that because the amount of

403

damages "were in issue" and because "there was some possibility that negligence would be apportioned," the question of "whether this claim required the payment of the policy limits was fairly debatable." *Id.* AISIC contends that this language controls the analysis as to the *Kontowicz* condition on the liability of the insured. AISIC argues that this condition cannot be satisfied here because a jury might apportion liability equally "between AIT and Bryan Casper"—Casper being a plaintiff and AIT being the sole defendant not insured by AISIC—"leaving AISIC owing nothing under the verdict."[10]

¶ 37. We disagree. AISIC's reliance on *Rhiel* is misplaced for two reasons. First, we note that in *Rhiel* the court was not addressing a Wis. Stat. § 628.46 claim at all. *Rhiel* was solely concerned with a bad faith claim. *See Rhiel*, 212 Wis. 2d at 47. As this court stated when discussing § 628.46 in *Poling v. Wisconsin Physicians Service*, "[t]his statute is unrelated to the tort of bad faith and permits the imposition of interest *even where bad faith is not present." Poling v. Wisconsin Physicians Serv.*, 120 Wis. 2d 603, 613, 357 N.W.2d 293 (Ct. App. 1984) (emphasis added). *See also Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 696, 271 N.W.2d 368 (1978). Facts that fail to establish a bad faith claim

---

[10] AISIC also argues that the trial court stated in the order that the case "could have gone to a jury," and if that is true, it cannot be said that the insured's liability was certain. But AISIC takes the trial court's comment out of context. Actually, it was made in the context of the "reasonable proof" part of the analysis immediately followed by this statement, which applies the correct test to that question, as set out in *Kontowicz*: "Regardless, common sense dictates that these defenses would not have convinced a reasonable insurer that it may not be responsible for the payment."

may nevertheless satisfy the conditions for imposing interest under the timely payment of claims statute.

¶ 38. Secondly, AISIC's reliance on *Rhiel* is misplaced because the very language AISIC relies on above supports the Caspers' position. The possibility that damages will be apportioned in this case, based on the stoplight acceleration testimony, clearly does not raise a "fairly debatable" question of AISIC's liability for payment because of the catastrophic injuries, future specials currently estimated to be far in excess of coverage, the relatively low policy limits, and Wearing's admissions. Thus AISIC's reliance on *Rhiel* is not persuasive.

¶ 39. But even more importantly, Wearing's admissions are similar to the admissions in *Kontowicz* and are sufficient to eliminate any question of his liability for purposes of satisfying this *Kontowicz* condition. Despite AISIC's attempts to distinguish *Kontowicz* on the grounds that there were formal admissions of liability there, and not here, we are not persuaded. AISIC's argument both overstates what *Kontowicz* requires and understates the damning concessions that were made by AISIC's insured Wearing.

¶ 40. *Kontowicz* consolidated two cases in which third parties had sought interest on delayed payments of claims. In the first of the cases, plaintiff Debra Kontowicz had been rendered a paraplegic when her van was struck from behind by a vehicle operated by Daniel Jeffers. *Kontowicz*, 290 Wis. 2d 302, ¶ 3. "In his answer, Jeffers admitted that he was negligent with respect to the operation of his motor vehicle." *Id.*, ¶ 5. In the second case, Larry Buyatt was injured in a motor vehicle collision caused by the negligence of a driver who hit Buyatt after failing to stop at a red light. *Id.*, ¶ 11. Each of these cases involved factual

situations where injured plaintiffs were hit by another driver under circumstances where fault was clear. Each of these cases involved a single driver at fault[11] who negligently failed to keep a lookout, drove too fast, and failed to slow appropriately for an intersection.

¶ 41. The *Kontowicz* court found that in both of these cases, this condition—no question of liability on the part of the insured—was satisfied. It appears to have based that conclusion on Jeffers' admission of negligence in his answer and Buyatt's insurer's admission of negligence. *Kontowicz*, 290 Wis. 2d 302, ¶¶ 11, 14, 53, 54. That does not necessarily mean, of course, that such admissions are a *prerequisite* to concluding that there is no question of liability on the part of the insured, and it would be absurd to allow an insurer to defeat the "no question" condition merely by disputing it.

¶ 42. And here, Wearing's deposition testimony is tantamount to an admission of liability like those of Jeffers' and Buyatt's insurer in *Kontowicz*. Wearing admitted taking drugs while driving, he admitted not seeing the minivan until impact, he admitted being in

---

[11] We note that these cases are also readily distinguishable from our decision in *Hegarty v. Beauchaine*, 2006 WI App 248, ¶¶ 279–292, 297 Wis. 2d 70, 727 N.W.2d 857, where we held that the plaintiffs were not entitled to interest for untimely paid claims on the grounds that this *Kontowicz* condition had not been satisfied. There, the insured was one of multiple doctors whose liability for the injuries claimed was not established, we held, "until the jury so found." *Id.*, ¶ 290. We therefore concluded that "there was most definitely a 'question of liability on the part of the insured.'" *Id.* We noted the difference between those facts and the facts of the two cases decided in *Kontowicz*, "where [the driver in the first case] conceded liability and where *it was clear that* [*the driver in the second case*] *was at fault*[.]" *Id.* (emphasis added).

sixth gear and not slowing as he approached the intersection, and he admitted violating the federal regulations by driving a longer time than was legally permitted. We conclude that these admissions are like those in *Kontowicz* and satisfy the "no question of liability" condition.

### D. AISIC did not have "reasonable proof" that it did not owe payment.

¶ 43. The statute states that a claim is not deemed overdue *"when the insurer has reasonable proof to establish that the insurer is not responsible for the payment,* notwithstanding that written notice has been furnished to the insurer." WIS. STAT. § 628.46(1) (emphasis added). "The only escape clause for avoidance of this interest assessment is when the insurer has reasonable proof that it is not responsible for the payment." *Poling,* 120 Wis. 2d at 613.

¶ 44. Again, the claims of contributory negligence are the basis for AISIC's argument here. AISIC argues that it had reasonable proof of nonresponsibility for paying the Caspers' claim because Casper's alleged delayed acceleration from the green light made AISIC's responsibility for payment fairly debatable.

¶ 45. We reject that argument because "reasonable proof" relates to *responsibility for payment.* Even if Casper were assigned some contributory negligence, it is clear that Casper's contributory negligence would not exceed AISIC's greater proportional share or bring AISIC's responsibility below its limits given the low policy limits, the clear negligence of Wearing, and the

407

high specials and futures. The "reasonable proof" exception is satisfied where there is evidence sufficient to make a "reasonable insurer" conclude that it may not be responsible for payment. *Kontowicz*, 290 Wis. 2d 302, ¶ 48. As was true in both *Kontowicz* and *Dilger*, in this case there is no reasonable view that any contributory negligence by actors other than Wearing would have reduced AISIC's liability below its policy limits. *See id.*, ¶ 53, n.17. *See also Dilger*, 364 Wis. 2d 410, ¶¶ 13, 15.[12]

¶ 46. But even more significantly, AISIC's own internal documents defeat its "reasonable proof" argument. The test is whether a reasonable insurer could conclude it was not responsible for payment. *Kontowicz* 290 Wis. 2d 302, ¶ 48. Here AISIC's own adjusters advised that it should expect to be responsible for the payment. The claims adjuster initially assigned to the case evaluated the case as follows in a document dated October 13, 2003:

> *Liability is unfavorable. This is a policy limits case.* Medical bills for Michael Casper are estimated to be $400,000 to date. Sarah Janey had an extensive hospital stay and her medical bills are estimated to be in excess of $100,000. We have established contact with the plaintiff attorney and have advised him of our limits. Insured does not have excess coverage. Plaintiff attorney recently requested copy of our policy and we will forward accordingly. We are increasing Michael Casper reserve to remaining policy limit of

[12] *Dilger* does not stand for the proposition that *any* assertion of non-responsibility constitutes a "fairly debatable" one, and the fact that *Dilger* involved a criminal conviction for the driver does not mean a criminal conviction and sentencing is required in all cases before holding insurers responsible for untimely paid claims.

$909,000 . . . . We will meet soon with plaintiff attorney and offer our limits, cash and a structured settlement.

(Emphasis added.)

¶ 47. The record also includes deposition testimony of three AISIC claims adjusters who subsequently handled the claim while the case was pending, and none disputed the first adjuster's assessment that liability was "unfavorable," that the damages would far exceed the policy limits, or that this was a "policy limits case." Thus, AISIC's own internal records showed clearly that it fully expected to pay its policy limits and had no expectation that contributory negligence would be found to bring its exposure below those limits. AISIC's own proof showed it had no "reasonable proof" that there was any likelihood of its nonresponsibility for payment of the policy limits to the Caspers.

## III. An award of interest under Wis. Stat. § 628.46 is not barred by the fact that an insurer has duties to multiple insureds.

¶ 48. Finally, AISIC contends that *Kontowicz* does not apply to require Wis. Stat. § 628.46 interest here because this case is distinguishable from *Kontowicz* in that this case involves an insurer with multiple insureds. The interpretation of a statute is a question of law subject to *de novo* review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). AISIC states, "Wisconsin law does not, should not and cannot compel an insurer covering multiple insureds under one policy to pay interest under Wis. Stat. § 628.46." We disagree that *Kontowicz* left room for AISIC's interpretation of the statute.

¶ 49. AISIC argues at length that for policy reasons relating to its contractual duties to its insureds, application of WIS. STAT. § 628.46 is unfair in a multiple-insured context. Admittedly there were not multiple insureds involved in *Kontowicz*. We conclude however that the statute applies to AISIC, despite its having multiple insureds, because the *Kontowicz* conditions are satisfied and we cannot discern (and AISIC did not develop) any difference in application of those conditions in a multiple-insured case. To the extent AISIC is arguing that the potential for multiple contributory negligence and contribution claims in the multiple-insured case makes the statute inapplicable in the multiple insured context, we have discussed and rejected those arguments above. To the extent that AISIC is arguing that public policy compels rejecting statutory interest here due to the existence of multiple insureds, we reject that argument because the basic core of that argument—the contract between insured and insurer—has already been considered and accounted for in *Kontowicz*.

¶ 50. AISIC's arguments are almost identical to arguments that were soundly rejected by our supreme court in *Kontowicz*, where the majority held that the statute's purpose—"to discourage insurance companies from creating unnecessary delays in paying claims owed"—required "general application of the statute" despite any contravening policy concerns:

> The plain language of the statute is not overcome by [insurers'] policy arguments against applying WIS. STAT. § 628.46 interest to third-party claims. Respondents suggest that allowing § 628.46 to be applied to third-party claimants like the Petitioners, so that they are able to receive § 628.46 interest, will undermine

the fiduciary relationship between insurer and insured. Such application, Respondents argue, imposes a penalty on an insurer who attempts to fulfill its duty to defend its insured. Moreover, Respondents argue that allowing such interest on third-party claims would have a chilling effect upon settlement negotiations, increase litigation, and is contrary to the adversarial nature of third-party litigation.

We disagree with these arguments. The purpose of WIS. STAT. § 628.46 is to discourage insurance companies from creating unnecessary delays in paying claims owed. This purpose is advanced if the injured party is a third-party claimant just as much as if he or she is the insured. We also note that our case law has reasoned that the purpose of § 628.46 is not to penalize insurers, but to compensate claimants for the value of the use of their money. "Prejudgment interest generally is considered compensation for the time value of money and a means of preventing defendants from prolonging litigation and benefitting (sic) from the delay." *This purpose is furthered by a general application of the statute to ensure timely payments are made to all, not just first-party, claimants.*

*Kontowicz*, 290 Wis. 2d 302, ¶¶ 46–47 (citations omitted) (emphasis added).

¶ 51. Thus the policy behind the statute is equally applicable to single or multiple-insured situations. It is not to punish insurance companies, but to "compensate claimants for the time value of their money." *Id.*, ¶ 47. " 'Prejudgment interest generally is considered compensation for the time value of money and a means of preventing defendants from prolonging litigation and benefitting (sic) from the delay." ' *Id.* And that purpose is fulfilled by applying it to all claimants. *Id.* The majority considered and explicitly rejected

411

AISIC's argument that imposing the statute on third-party claimants would interfere with the insurer's fiduciary duty to its insured. That is the same argument that AISIC makes here in the multiple-insured context. But the majority directly concluded that the policy supports general application of the statute.

¶ 52. Accordingly, we conclude AISIC's policy argument has thus been considered and rejected by the supreme court in the third-party claimant context, and we conclude the court's rejection is equally applicable in the multiple-insured context here.

¶ 53. For these reasons, we conclude that plaintiffs are entitled to the interest awarded by the trial court, and we affirm the order granting summary judgment and awarding interest in the amount of $684,499.14.

*By the Court.*—Order affirmed.